MANATT, PHELPS & PHILLIPS, LLP
ROBERT D. BECKER (Bar No. CA 160648)
E-mail:  rbecker@manatt.com
RONALD S. KATZ (Bar No. CA 085713)
E-mail:  rkatz@manatt.com
SHAWN G. HANSEN (Bar No. CA 197033)
E-mail:  shansen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA  94304-1006
Telephone:  (650) 812-1300
Facsimile:  (650) 213-0260

*Attorneys for*
KELORA SYSTEMS, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| eBay Inc. and Microsoft Corporation,<br><br>*Plaintiffs and Counterclaim-Defendants,*<br><br>vs.<br><br>Kelora Systems, LLC,<br><br>*Defendant and Counterclaim-Plaintiff.* | No. 4:10-cv-4947-CW (filed Nov. 2, 2010)<br><br>**KELORA SYSTEMS, LLC'S OPPOSITION TO DEFENDANTS' CLAIM CONSTRUCTION BRIEF AND MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND NONINFRINGEMENT; AND OBJECTIONS TO EVIDENCE**<br><br>Hearing Date:      November 17, 2011<br>Hearing Time:      2:00 p.m.<br>Hearing Location:  Courtroom 2, 4th Floor |
| Cabela's Inc.,<br><br>*Plaintiff and Counterclaim-Defendant,*<br><br>vs.<br><br>Kelora Systems, LLC,<br><br>*Defendant and Counterclaim-Plaintiff.* | No. 4:11-cv-1398-CW (filed Mar. 23, 2011)<br>(related case) |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

| | |
|---|---|
| | No. 4:11-cv-1548-CW (filed Nov. 8, 2010) |
| Kelora Systems, LLC, | (related case) |
| | |
| *Plaintiff and Counterclaim-Defendant*, | |
| | |
| vs. | |
| | |
| Target Corporation; OfficeMax Incorporated; | |
| Rockler Companies, Inc.; 1-800-Flowers.com, | |
| Inc.; Amazon.com, Inc.; Dell, Inc.; Office | |
| Depot, Inc.; Newegg Inc.; Costco Wholesale | |
| Corporation; Hewlett-Packard Company; | |
| CircuitCity.com Inc.; Audible, Inc.; and | |
| Zappos.com, Inc., | |
| | |
| *Defendants and Counterclaim-Plaintiffs.* | |
| | |
| OfficeMax Incorporated, | |
| | |
| *Third-Party Plaintiff*, | |
| | |
| vs. | |
| | |
| Adobe Systems Incorporated, | |
| | |
| *Third-Party Defendant.* | |
| | No. 4:11-cv-2284-CW (filed Feb. 3, 2011) |
| Nebraska Furniture Mart, Inc., | (related case) |
| | |
| *Plaintiff and Counterclaim-Defendant*, | |
| | |
| vs. | |
| | |
| Kelora Systems, LLC, | |
| | |
| *Defendant and Counterclaim-Plaintiff.* | |

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................... 1

    A.    The Reexamined Claims Are Not Invalid Due to Obviousness............................ 1

    B.    The Reexamined Claims Are Not Invalid Due to Broadening Amendments ........ 2

    C.    There Is No Issue of Divided Infringement Because The Reexamined
    Claims Are Infringed By Single Entities: Each Defendant....................................... 3

    D.    Resolution Of The Parties' Disputes Requires Little Claim Construction ............ 3

II.    ISSUES TO BE DECIDED ................................................................................... 4

III.    DISPUTED FACTS ................................................................................... 4

    A.    The Patent-in-Suit: U.S. Patent No. 6,275,821 to Danish and Kimbrough ........... 4

    B.    The Source Code For The AMP Navigator Demonstration Program Proves
    It Was Not Capable Of Performing The Methods Of The Reexamined
    Claims ................................................................................... 5

    C.    The Reexamined Claims At Issue Are Expressly Limited To Actions
    "Performed With A Server" And Require No Action On A User's
    Computer ................................................................................... 9

        1.    Client-server Architecture Of Embodiments In An Internet
        Environment ................................................................................... 9

        2.    "Displaying," "Revising," and "Accepting A Second Selection
        Criteria [Comprising] A Resubmission" Are Functions Performed
        By The Server In Embodiments In An Internet Environment ................. 10

        3.    Ministerial Functions Of The Client In Embodiments In An Internet
        Environment ................................................................................... 11

        4.    "Resubmission" Refers To What Is Accepted By The Server in
        Step (h), Not A Separate Function Performed By The Client................. 12

    D.    Narrowing Amendments In Reexamination Were Made To Distinguish The
    Claims From Cited Prior Art................................................................... 13

    E.    Defendants' Divided Infringement Theories Cannot Negate Their Own
    Direct, Internal Use In Designing, Deploying, and Testing................................. 14

IV.    GENERAL LEGAL STANDARDS ................................................................. 14

    A.    Claim Construction ................................................................................... 14

    B.    Presumption Of Validity ................................................................................... 15

    C.    Obviousness ................................................................................... 16

    D.    Non-infringement ................................................................................... 16

    E.    Summary Judgment ................................................................................... 16

**TABLE OF CONTENTS**
(continued)

| | | | Page |
|---|---|---|---|

V.    ARGUMENT ...................................................................................... 17

    A.    Kelora's Proposed Claim Constructions ................................................ 17

        1.    The term "server" in the preambles of claims 1 and 9 means: "a web server" .................................................................................. 17

        2.    The term "displaying" means: "The action of sending a page to a display surface or device for viewing" ....................................... 18

        3.    The term "accepting" means: "accepting selection criteria for processing" ........................................................................... 18

        4.    The term "selection criteria" means: "a signal including one or more alternatives to be used in search operations" .................. 18

        5.    With respect to the terms "revising," "determining," "providing a computer readable data file of stored information," and "reading said data file":  The ordinary and customary meaning of these terms is readily apparent, requiring no construction by the Court ................... 18

    B.    Collateral Estoppel Does Not Apply To The Reexamined Claims Because They Are Not Identical To The Original Claims ................................ 18

    C.    Defendants Have Not Shown They Are Entitled To Summary Judgment That Claims 1–4 and 9 Are Obvious ...................................................... 18

        1.    The Third Graham Inquiry: The Parties Dispute The Proper Level of Ordinary Skill ......................................................................... 20

        2.    The First Graham Inquiry: The Parties Dispute The Scope And Content Of The Prior Art ........................................................... 21

            a.    It Is Disputed Whether The AMP Navigator Demonstration Program Is Prior Art Under Section 102(b) With Respect To The Reexamined Claims ................................................. 21

            b.    It Is Disputed Whether Arnett Is Prior Art Under Section 102(a) .......................................................................... 24

            c.    The First Graham Inquiry: Disputes Regarding The Content Of Defendants' Cited References ............................... 24

                i.    The Content Of The AMP Navigator Demonstration Program Is Disputed Even If It Is Considered Prior Art ................................................................. 24

                ii.    The Parties Dispute The Content Of Suzuki ................ 25

                iii.    The Parties Dispute Whether Berners-Lee, Ng, and PC Magazine Teach A Server Accepting A Resubmission ..................................................... 26

                iv.    The Parties Dispute the Content of Arnett ................. 27

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF CONTENTS
## (continued)

Page

(a) Arnett Does Not Teach A Server "Accepting" "Selection Criteria … Comprising A Resubmission' ............................... 27

v. The Parties Dispute The Content of the HIBROWSE References............................................................. 29

3. The Second Graham Inquiry: The Parties Dispute The Differences Between The Prior Art And The Reexamined Claims.............................. 29

a. Defendants Fail To Compare The AMP Navigator Demonstration Program To The Properly Construed Reexamined Claims On a Claim-by-Claim and Element-By-Element Basis ........................................................................ 29

b. Defendants Have Not Shown That The Elements Of Claim 9 Are Present In The Prior Art And Thus Have Not Analyzed The Differences Between Their Cited References And Claim 9 ............................................................................... 31

c. The Parties Dispute Whether Any Combination of AMP Navigator Demonstration Program With Suzuki, Arnett, or Berners-Lee Teach The Methods of the Reexamined Claims ...... 31

i. "Server" In The Claims Means "Web Server"................. 31

ii. Combination Of Suzuki With The AMP Navigator Demonstration Program ...................................... 32

iii. Web and HTTP References, including Arnett, Do Not Teach The Missing Elements of the Reexamined Claims ........................................................... 32

iv. "Revising" Means That The Server Sends The First Selection Criteria To The Client And Is Also Not Taught By Any References or Combination Thereof ....... 33

d. The Parties Dispute Whether One Of Ordinary Skill Would Have Had A Reason To Combine The AMP Navigator Demonstration Program With Defendants' Other References...... 33

e. The Parties Dispute Whether A Person of Ordinary Skill in the Art Would Have Had A Reasonable Expectation of Success Developing the Claimed Invention By Combining The AMP Navigator Demonstration Program With Defendants' Other References ...................................... 35

4. A Prima Facie Case of Obviousness of Claims 1 and 9 Has Not Been Made ................................................................. 37

5. Secondary Considerations Weigh Against A Finding Of Obviousness ................................................................ 37

**TABLE OF CONTENTS**
(continued)

Page

6. Defendants Have Not Shown That Dependent Claims 2-4 Are Obvious ................................................................ 38

D. The Reexamined Claims Are Not Invalid Under 35 U.S.C. § 305 Because No Amendments During Reexamination Enlarged The Scope of the Claims ...... 39

1. Applicable Law Regarding Invalidity Under 35 U.S.C. § 305 ................ 40

E. There Is No Divided Infringement Issue Because The Reexamined Claims At Issue Are Expressly Limited To Actions "Performed With A Server" And Require No Action By Any Other Entity ..................................................... 46

1. Applicable Legal Standards ................................................ 47

2. Claims 1–4 and 9: "displaying" ............................................ 49

3. Claims 1–4: "revising said feature screen to indicate the available alternatives of the [first/second] subfamily" .............................. 52

4. Claims 1–4, 9: "accepting a second selection criteria ... [that] comprises a resubmission" ................................................. 53

5. Regardless of claim construction arguments, no evidence has been submitted to show that the steps are neither performed by any Defendant nor directed or controlled by any Defendant ......................... 54

F. The Endeca Users' Infringement Is Not Divided ................................................. 55

1. The Endeca Users Do Not Dispute That The Claim Steps "Determining Available Alternatives," "Accepting A Second Selection Criteria," and "Determining A [First/Second] Subfamily" Are Performed By The Software They Run On Their Servers ................ 56

2. "providing a computer readable data file of stored information"/"reading said data file" ..................................... 57

G. Claim construction for remaining terms ......................................... 58

1. "said alternatives represented in the family" ........................... 58

VI. KELORA'S OBJECTIONS TO EVIDENCE CITED BY DEFENDANTS .................. 59

VII. CONCLUSION ........................................................................... 60

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

iv

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

5

*ACTV, Inc. v. Walt Disney Co.,*
346 F.3d 1082 (Fed. Cir. 2003).................................................................. 50

6

*Advanced Display Sys. v. Kent State Univ.,*
212 F.3d 1272 (Fed. Cir. 2000).................................................................. 38

7

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
2011 U.S. App. LEXIS 19425 (Fed. Cir. Sept. 20, 2011)........................... 48

8

*Allen Engineering Corp. v. Bartell Industries,*
299 F. 3d 1336 (Fed. Cir. 2002)............................................................ 21, 22

9

10

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.,*
725 F.2d 1350 (CA Fed. 1984) ................................................................... 15

11

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).................................................................................... 17

12

*Asahi Glass Co,. Ltd. v. Guardian Indus. Corp.,*
Civ. No. 09-515-SLR, 30 (D. Del. Sept. 26, 2011)............................... 34, 60

13

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,*
776 F.2d 281 (Fed. Cir. 1985).................................................................... 27

14

15

*Astrazeneca AB v. Mutual Pharm. Co.,*
384 F.3d 1333 (Fed. Cir. 2004).................................................................. 42

16

*August Tech. Corp. v. Camtek, Ltd.,*
2011 U.S. App. LEXIS 17451 (Fed. Cir. Aug. 22, 2011)....................... 22, 23

17

*Bank Melli Iran v. Pahlavi,*
58 F.3d 1406 (9th Cir. 1995)...................................................................... 59

18

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,*
249 F.3d 1341 (Fed. Cir. 2001).................................................................. 58

19

20

*BMC Resources, Inc. v. Paymentech, L.P.,*
498 F.3d 1373 (Fed. Cir. 2007)........................................................ 47, 48, 57

21

*Burke, Inc. v. Bruno Indep. Living Aids, Inc.,*
183 F.3d 1334 (Fed. Cir. 1999).............................................................. 49, 54

22

*C.R. Bard, Inc. v. U.S. Surgical Corp.,*
388 F.3d 858 (Fed. Cir. 2004)................................................................... 42

23

*CCS Fitness, Inc. V. Brunswick Corp.,*
288 F.3d 1359 (Fed. Cir. 2002).................................................................. 32

24

25

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)........................................................................ 16, 20, 23

26

*Creo Prods., Inc. v. Presstek, Inc.,*
305 F.3d 1337 (Fed. Cir. 2002).................................................................. 40

27

*Cybor Corp. v. FAS Techs., Inc.,*
138 F.3d 1448 (Fed. Cir. 1998).................................................................. 47

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Dana Corp. v.Am. Axle Mfg., Inc.*,
   279 F.3d 1372 (Fed. Cir. 2002) ........................................................................ 30

*Dayco Prods., Inc. v. Total Containment, Inc.*,
   329 F.3d 1358 (Fed. Cir. 2003) .................................................................... 18, 30

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   567 F.3d 1314 (Fed. Cir. 2009) ........................................................... 34, 43, 46

*Eisenberg v. Ins. Co. of N. Am.*,
   815 F.2d 1285 (9th Cir. 1987) ........................................................... 16, 20, 23

*Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*,
   508 F.3d 1366 (Fed. Cir. 2007) ........................................................................ 15

*Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*,
   873 F.2d 229 (9th Cir. 1989) ........................................................................... 18

*Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*,
   287 F. 3d 1108 (Fed. Cir. 2002) .................................................................. 55, 56

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966) ................................................................................... passim

*Hall Company, Inc. v. Atlanta Corrugating, LLC*,
   370 F.3d 1343 (Fed. Cir. 2004) ........................................................................ 32

*In re Fine*,
   837 F.2d 1071 (Fed. Cir. 1988) ........................................................................ 39

*In re Kahn*,
   441 F.3d 977 (Fed. Cir. 2006) ......................................................................... 19

*In re Ochiai*
   71 F.3d 1565 (Fed. Cir. 1995) ......................................................................... 21

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004) ........................................................................ 14

*Int'l Shortstop, Inc. v. Rally's, Inc.*,
   939 F.2d 1257 (5th Cir. 1991) ......................................................................... 17

*Intel Corp. v. Hartford Accident & Indem. Co.*,
   952 F.2d 1551 (9th Cir. 1991) ............................................................. 16, 20, 23, 24

*Invitrogen, Corp. v. Biocrest Manufacturing, L.P.*,
   327 F.3d 1374 (Fed. Cir. 2005) ........................................................................ 41

*Jack v. TransWorld Airlines, Inc.*,
   854 F.Supp. 654 (ND CA 1994) ....................................................................... 60

*Kahn v. General Motors Corp.*,
   135 F.3d 1472 (Fed. Cir. 1998) .................................................................. 16, 29

*Kao Corp. v. Unilever U.S., Inc.*,
   441 F.3d 963 (Fed. Cir. 2006) ......................................................................... 34

*KSR In't Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ................................................................................. passim

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

vi

**TABLE OF AUTHORITIES**
(continued)

Page

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ........................................................................ 50

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) .............................................................................. 14, 15

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
  579 F. 3d 1363 (Fed. Cir. 2009) ..................................................................... 55

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ........................................................................ 16, 20, 23, 24

*McKesson Techs. Inc. v. Epic Systems Corp.*,
  (No. 2010-1291), 2011 U.S. App. LEXIS 19425 (Fed. Cir. September 20, 2011) ............. 48

*Merck & Co. v. Teva Pharms. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005) ..................................................................... 51

*Microsoft Corp. v. AT & T Corp.*,
  127 S. Ct. 1746 (2007) ............................................................................ 56

*Microsoft Corp. v. i4i Ltd. P'ship*,
  131 S. Ct. 2238 (U.S. 2011) ........................................................................ 15

*MicroStrategy Inc. v. Business Objects, S.A.*,
  429 F.3d 1344 (Fed. Cir. 2005) ..................................................................... 16

*Monarch Knitting Machinery Corp. v. Sulzer Morat GMBH*,
  139 F.3d 877 (Fed. Cir. 1998) ...................................................................... 35

*Muniauction, Inc. v. Thomson Corp.*,
  532 F.3d 1318 (Fed. Cir. 2008) ................................................................. 47, 48

*Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ...................................................................... 17

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ..................................................................... 58

*Oatey Co. v. IPS , Corp.*,
  514 F.3d 1271 (Fed. Cir. 2008) ..................................................................... 41

*Orthopedic Equip. Co. v. United States*,
  702 F.2d 1005 (Fed. Cir. 1983) ..................................................................... 35

*Pfaff v. Wells Elecs., Inc.*,
  525 U.S. 55 (1998) ........................................................................ 1, 21, 22, 23

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
  491 F.3d 1342 (Fed. Cir. 2007) ..................................................................... 34

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...................................................... passim

*Plumtree Software, Inc. v. Datamize, LLC*,
  473 F.3d 1152 (Fed. Cir. 2006) ..................................................................... 24

*Predicate Logic, Inc. v. Distributive Software, Inc.*,
  544 F.3d 1298 (Fed. Cir. 2008) ............................................................. 40, 43, 46

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

vii

**TABLE OF AUTHORITIES**
(continued)

Page

*Quantum Corp. v. Rodime, PLC,*
   65 F.3d 1577 (Fed. Cir. 1995)............................................................. 40, 43

*Reckitt Benckiser, Inc. v. Watson Labs., Inc.,*
   2011 U.S. App. LEXIS 13980 (Fed. Cir. July 7, 2011) ....................... 15

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.,*
   442 F.3d 741 (9th Cir. 2006).............................................................. 18

*Salazar v. Procter & Gamble Co.,*
   414 F.3d 1342 (Fed. Cir. 2005)................................................. 42, 45, 46

*Schumer v. Lab. Computer Sys., Inc.,*
   308 F.3d 1304 (Fed. Cir. 2002)........................................................... 29

*Seachange Int'l, Inc. v. C-COR Inc.,*
   413 F.3d 1361 (Fed. Cir. 2005)........................................................... 15

*SiRF Tech., Inc. v. ITC,*
   601 F.3d 1319 (Fed. Cir. 2010).......................................... 47, 48, 49, 54

*Sparton Corp. v. United States,*
   399 F.3d 1321 (Fed. Cir. 2005)........................................................... 23

*SRI Int'l v. Matsushita Elec. Corp. of Am.,*
   775 F.2d 1107 (Fed. Cir. 1985)..................................................... 15, 44

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.,*
   529 F.3d 1364 (Fed. Cir. 2008)........................................................... 44

*Torphram, Inc. v. Ranbaxy Pharmaceuticals, Inc.,*
   336 F.3d 1322 (Fed. Cir. 2003)........................................................... 21

*U.S. Surgical Corp. v. Ethicon, Inc.,*
   103 F.3d 1554 (Fed. Cir. 1997)........................................................... 58

*UA Local 343 v. Nor-Cal Plumbing, Inc.,*
   48 F.3d 1465 (9th Cir. 1994).............................................................. 17

*Uniloc USA, Inc. v. Microsoft Corp.,*
   632 F.3d 1292 (Fed. Cir. 2011)..................................................... 47, 54

*Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n,*
   366 F.3d 1311 (Fed. Cir. 2004)........................................................... 42

*Verizon Services Corp. v. Vonage Holdings Corp,*
   503 F.3d 1295 (Fed. Cir. 2007)........................................................... 41

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996)..................................................... passim

*W.L. Gore v. Garlock,*
   721 F.2d 1540 (Fed. Cir. 1983)........................................................... 27

**STATUTES**

35 U.S.C. § 102 ................................................................................... 16

35 U.S.C. § 102(a) ............................................................................... 24

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

35 U.S.C. § 102(b) ............................................................................................ passim

35 U.S.C. § 103 ............................................................................................... 19, 23

35 U.S.C. § 103(a) ............................................................................................. 4, 16

35 U.S.C. § 282 ............................................................................................... 15, 18

35 U.S.C. § 305 ................................................................................................ passim

35 U.S.C. § 305[] ................................................................................................... 39

# OTHER AUTHORITIES

Manual of Patent Examining Procedure (MPEP) § 2258(III)(A) ................................. 39

# RULES

Fed. Rule Civ. Proc. § 56 ........................................................................................ 16

Fed. Rule Evidence § 403 ................................................................................. 59, 60

Fed. Rule Evidence § 602 ....................................................................................... 60

Fed. Rule Evidence § 604 ....................................................................................... 60

Fed. Rule Evidence § 702 ....................................................................................... 60

Fed. Rule Evidence § 901 ....................................................................................... 60

Patent L.R. 3-3(c) ............................................................................................ 24, 59

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Defendants' Claim Construction Brief and Motion for Summary Judgment of Invalidity and Non-infringement ("Motion") offers little beyond the defenses that were previously considered and rejected by this Court's prior summary judgment ruling in Case No. 10-4947. Docket No. 70.  The Motion demonstrates that resolution of the Defendants' defenses in the Motion requires little construction of the claim language, consistent with Kelora's claim construction proposals.  Moreover, numerous genuine disputes concerning material facts preclude summary judgment.  The summary adjudications sought in the Motion should be denied.

### A.      The Reexamined Claims Are Not Invalid Due to Obviousness

The Motion largely recycles unpersuasive arguments regarding alleged invalidity due to the inventors' own work and broadening amendments in reexamination, which were previously rejected when the Court denied the corresponding portions of the motion for summary judgment filed by eBay, Microsoft and Shopzilla in Case No. 10-4947.  *See* Docket No. 70 in Case No. 10-4947.  In that Order, the Court denied summary judgment of invalidity based on its invalidity judgment in the prior PartsRiver case. *Id*. at 10.  There is, accordingly, no assertion in the Motion of invalidity due to anticipation by the AMP Navigator demonstration program.

Defendants incorrectly frame the obviousness issue with reference to the Court's prior invalidity ruling regarding the original claims.  On the contrary, it is not relevant whether the original claims were invalid, as those no longer exist and are not at issue here.  The present issue is whether the **reexamined** claims are valid.

Defendants have failed to meet their burden to show that the **reexamined** claims are obvious under the applicable legal standards.  Indeed, because it is undisputed that the reexamined claims were not conceived until after the critical date, the offer for sale at issue in the Court's prior invalidity ruling is **not prior art** with respect to the reexamined claims under the *Pfaff* standard for Section 102(b) references. The AMP Navigator demonstration program also is not prior art under Section 102(b) with respect to the reexamined claims because it neither anticipates nor renders obvious the reexamined claims.

1    Tellingly, Defendants have identified no prior art better than the inventors' own work, as

2    the AMP Navigator demonstration program is the primary reference relied upon in the

3    Defendants' obviousness arguments.  Even if it were prior art under Section 102(b), the AMP

4    Navigator demonstration program indisputably had no server functionality and was not capable of

5    performing the acceptance by a server of a second selection criteria that includes a resubmission,

6    as required in the reexamined claims.  The reexamination amendments fundamentally changed

7    the architecture and implementation of the claimed invention in ways ignored in the Motion.

8    Defendants make no effort to map the AMP Navigator demonstration program onto the

9    elements of the reexamined claims.  This is understandable, as the AMP Navigator demonstration

10   program is dramatically more distinct from the reexamined claims than the Motion portrays and

11   no expert testimony was presented by the Defendants to explain the AMP Navigator

12   demonstration program.  Not only does the Motion fail to demonstrate that all of the elements of

13   the reexamined claims at issue were present in the prior art, but the prior art demonstrates that the

14   differences between the reexamined claims and the prior art were not obvious.

15   Defendants, which notably did not rely on an expert for obviousness, rely on other prior

16   art references that would not have worked in combination with the AMP Navigator demonstration

17   program and/or teach away from the claimed inventions. Indeed, the Motion fails to establish a

18   *prima facie* case of obviousness because it fails to demonstrate that all of the elements of the

19   reexamined claims were present in the prior art, and it fails to demonstrate any reason why a

20   person of ordinary skill in the art would have combined disparate prior art teachings in the

21   manner claimed with a reasonable expectation of success.  Even if a *prima facie* case of

22   obviousness were established, the secondary considerations of non-obviousness present here,

23   including particularly commercial success evidenced by the subsequent widespread adoption by

24   others, firmly rebut any conclusion of obviousness.

25   **B.      The Reexamined Claims Are Not Invalid Due to Broadening Amendments**

26   Only by improperly importing limitations not found in the plain language of the original

27   and reexamined claims do the Defendants contrive their broadening amendment theories.  The

28   broadening amendment arguments raised by the Defendants are not anymore availing than when

2

1   first broached in the previous motion summary judgment, which the Court denied.  *See* Docket

2   No. 70 in Case No. 10-4947.  Defendants' Motion does not show that the reexamined claims

3   cover anything that was not covered by the original claims.

4       **C.      There Is No Issue of Divided Infringement Because The Reexamined Claims
                  Are Infringed By Single Entities: Each Defendant**

5           The Defendants' divided infringement arguments also rely on incorrect claim

6   construction.  Defendants do not argue that any of the "accepting," "displaying," or "revising"

7   functions are not performed, only that the claims should be construed to require these functions to

8   be performed by a different entity.   Nothing in the record compels such constructions.

9           With respect to the non-infringement arguments offered by the Endeca Users, Newegg,

10  Cabela's, and NFM, only by ignoring their own installation, configuration, testing and

11  deployment of the software on their own servers do they argue that they do not practice certain

12  claim elements.  This argument is particularly nonsensical given that the Endeca Users expressly

13  admit they use the Endeca software and do not dispute that they run it on their own servers.

14          Even if Defendants' erroneous claim construction proposals are adopted, Defendants still

15  are liable for direct infringement considering their own internal direct infringement by their own

16  employees and agents, without which they could not develop, deploy, test or maintain the

17  functionality accused of infringement.

18      **D.      Resolution Of The Parties' Disputes Requires Little Claim Construction**

19          Moreover, the Defendants concede that the parties' disputes largely do not depend on

20  claim construction, consistent with Kelora's position that most of the claim language should

21  simply be accorded its plain meaning as the case law counsels.  For example, the Defendants

22  argue on the very first page of the Motion that the Court should find the claims obvious,

23  "regardless of what claim constructions are adopted."  Motion at 1.  And with respect to claim

24  construction issues not raised in the Motion, the Defendants ask the Court to simply adopt, in

25  what would amount to an advisory opinion, the claim constructions that were allegedly agreed in

26  the previous litigation regarding different claims.  Motion at 2.  Where necessary to resolve the

27  parties' disputes on the merits, the Court should adopt Kelora's claim construction proposals.

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

3                                   KELORA'S OPPOSITION TO DEFENDANTS'
                                    CLAIM CONSTRUCTION BRIEF AND MOTION
                                    FOR SUMMARY JUDGMENT

1   Otherwise, the Court should not undertake advisory construction of the claim language.

2   **II.    ISSUES TO BE DECIDED**

3       Kelora responds to the Defendants' statement of issues to be decided as follows:

4   1.  Did Defendants meet their burden to show that there are no genuine issues of material fact
        and that they are entitled to judgment as a matter of law that claims 1–4 and 9 are obvious
5       under 35 U.S.C. § 103(a) in light of the alleged prior art, including the AMP Navigator
        demonstration program and allegedly known Internet techniques? (No.)
6

7   2.  Did Defendants meet their burden to show that there are no genuine issues of material fact
        and that they are entitled to judgment as a matter of law that claims 1–4 and 9 are invalid
8       under 35 U.S.C. § 305 because of alleged broadening amendments made to the "accepting"
        step? (No.)

9   3.  Did Defendants meet their burden to show that there are no genuine issues of material fact
        and that they are entitled to judgment as a matter of law that claim 9 is invalid under 35
10      U.S.C. § 305 because of alleged broadening amendments made to the "revising" step? (No.)

11  4.  Did Defendants meet their burden to show that there are no genuine issues of material fact
        and that they are entitled to judgment as a matter of law that claims 1–4 and 9 are not
12      infringed as a result of alleged divided infringement with respect to the "displaying,"
        "revising," and "accepting a second selection criteria ... comprising a resubmission" steps?
13      (No.)

14  5.  Did Defendants meet their burden to show that there are no genuine issues of material fact
        and that they are entitled to judgment as a matter of law that claims 1–4 and 9 are not
15      infringed by the Endeca Users, who perform certain claim elements by running Endeca
        software on their own servers? (No.)
16

17  6.  Is the "server" in the preambles of claims 1 and 9 a "web server"? (Yes.)

18  7.  If the Court addresses the construction of "said alternatives," is that claim term limited to "***all***
        alternatives" for the family of items? (No.)

19  8.  If the Court addresses the additional claim construction issues identified at pages 58-60 of the
20      Motion, should the Court adopt the Defendants' proposed claim constructions for the
        following terms: "displaying"; "family of items"; "subfamily of items"; "alternative for each
21      item"; "feature screen"; "determining a [first/second] subfamily"; "determining available
        alternatives"; "grouping"? (No.)

22  **III.    DISPUTED FACTS**

23      **A.    The Patent-in-Suit: U.S. Patent No. 6,275,821 to Danish and Kimbrough**

24      The Patent-in-Suit is well known to this Court.  During the prior PartsRiver litigation,

25  original claims 1 and 2 of the '821 patent were found by this Court to be invalid under the on-sale

26  bar of 35 U.S.C. § 102(b).  Docket No. 234 in Case No. 09-811, p. 13.  However, those claims no

27  longer exist, are not at issue here, and previously in this litigation, this Court denied summary

28  adjudication that amended claims 1 and 2 and new claim 9 ("reexamined claims") are invalid

4       KELORA'S OPPOSITION TO DEFENDANTS'
        CLAIM CONSTRUCTION BRIEF AND MOTION
        FOR SUMMARY JUDGMENT

1    under the prior invalidity ruling because they are not identical in scope to original claims 1 and 2.

2    Docket No. 70 in Case No. 10-4947, p. 6.

3         In the prior PartsRiver litigation, the item held to be on-sale was a "demo" of a proposed

4    future phase of work for AMP Incorporated.  Docket No. 234 in Case No. 09-811, pp. 9-13.  This

5    demo is generally referred to in this Opposition as the "AMP Navigator demonstration program,"

6    a copy of which was submitted by Defendants as Exs. Q and R to the Chandler Declaration.  As

7    discussed further below, the author of the AMP Navigator demonstration program, Mr. Kris

8    Kimbrough, also named as an inventor of the '821 patent, has submitted a declaration herewith

9    explaining irrefutably, based on the source code, the actual functions performed by the AMP

10   Navigator demonstration program.  *See generally* Kimbrough Decl.  As discussed further below,

11   Mr. Kimbrough's declaration shows that the AMP Navigator demonstration program was not

12   capable of performing the methods of the reexamined claims.

13        After the summary judgment order in the prior *PartsRiver* litigation, the USPTO issued a

14   Reexamination Certificate for the '821 patent with the reexamined claims.  The reexamined

15   claims were narrowed to methods "performed with a server" and require "accepting a second

16   selection criteria" in step (h) to include a very specific "resubmission."  As discussed further

17   below, the AMP Navigator demonstration program on which Defendants rely was not capable of

18   any client-server interaction, had no server functionality, and was not capable of any form of

19   concatenated searching or acceptance of any resubmission.  Further, the AMP Navigator

20   demonstration program would not have functioned in combination with the other references on

21   which Defendants rely.

22        Indeed, the inventions of the reexamined claims had not been conceived at the time of this

23   offer.  The reexamined claims of the '821 patent were not conceived until much later, during or

24   before the second quarter of 1994.  Ex. 15 at 5, Ex. 11 at 375.

25   **B.      The Source Code For The AMP Navigator Demonstration Program Proves It
             Was Not Capable Of Performing The Methods Of The Reexamined Claims**
26

27        On March 5, 1992, inventor Mr. Danish's company, Danish International, prepared and

28   sent a draft document to AMP proposing a multiphase project to convert AMP's product catalog

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

5                    KELORA'S OPPOSITION TO DEFENDANTS'
                     CLAIM CONSTRUCTION BRIEF AND MOTION
                     FOR SUMMARY JUDGMENT

1  from paper to electronic format and to make the information searchable in a computer database.

2  Ex. S to Chandler Decl. at TWC001563-1564.[1]

3      The proposed development project consisted of five phases.  Phase Three of the project

4  involved implementing "[t]he ability to locate a part number by selecting product features in any

5  order ... [in which each] time a feature is selected, the list of other selectable features is narrowed

6  down to reflect only those remaining selectable features. Ex. S to Chandler Decl. at TWC001566.

7  The proposal indicated, "A demo of this approach is available at Danish International."  *Id*.

8      No mention is made as to the method(s) to be employed by the navigation system in Phase

9  Three or whether the navigation system would perform step (h) of original claim 1 "accepting a

10  second selection criteria comprising the alternatives of the first selection criteria plus at least one

11  alternative selected from the revised feature screen" in order to accomplish this feature.

12      As discussed further below, Mr. Kimbrough, co-inventor of the '821 patent and the author

13  of the source code for the AMP Navigator demonstration program contained on the CD-ROMs

14  attached to the Chandler Declaration as Exhibits Q and R, has provided a declaration herewith

15  explaining, based on his review of the source code <u>subsequent</u> to his deposition on January 22,

16  2009, that his tentative belief regarding concatenated search stated in his deposition testimony

17  and referred to at pages 22 and 25-26 of the Motion was incorrect.  Kimbrough Decl., ¶ 7.

18      Mr. Kimbrough has confirmed that the AMP Navigator demonstration program, when run,

19  does not in fact perform "concatenated search" and is not capable of doing so.  Kimbrough Decl.,

20  ¶ 8.  Mr. Kimbrough explains in his declaration that the source code shows that once a feature has

21  been submitted for searching, the status of the feature is changed from MARKED to SELECTED

22  for the remainder of the session and the feature is not submitted again for searching.  *Id*.  This is

23  because a feature is qualified to be submitted for the program to use for searching *only if* the

24  feature's record is designated as MARKED.  *Id*.  Accordingly, previously searched features,

25  which remain designated as SELECTED, are excluded and not submitted again for searching. *Id*.

26

27  [1] The draft proposal did not contain a commercial offer to sell any product to AMP.  Kelora
    recognizes that this line of argument may be inconsistent with the Court's prior ruling  in

28  *PartsRiver* but maintains its position for purposes of appeal.

1         In addition, Mr. Kimbrough has confirmed based on the source code for the AMP

2    Navigator demonstration program that the "resubmission" step as recited in step (h) of both

3    claims 1 and 9 of the reexamined '821 patent is not performed and cannot be performed when the

4    AMP Navigator demonstration program is run and used.  Kimbrough Decl., ¶ 9.  Notably, the

5    term "resubmission" was not discussed during Mr. Kimbrough's deposition of January 22, 2009,

6    contrary to Defendants' statements in footnote 9 on page 22 of the Motion.  Kimbrough Decl., ¶

7    9, *see also* Ex. 14.  Mr. Kimbrough explains that, according to its ordinary and customary

8    meaning, the term "resubmission" as recited in step (h) refers to a subsequent submission of

9    something which was the object of a previous submission.  Kimbrough Decl., ¶ 13.

10        Mr. Kimbrough also explains based on the source code that the AMP Navigator

11   demonstration program does not perform any client-server interaction and does not have ***any***

12   server functionality.  Kimbrough Decl., ¶ 14.  Further, the source code shows that after a first

13   round of searching in a search session is completed, a portion of the source code continues to be

14   executed such that as the program determines a particular feature's radio button or list box entry

15   in the software window is being selected, the feature's record in the data structure is updated and

16   designated with the "MARKED" attribute.  Kimbrough Decl., ¶ 22.  However, the program will

17   *skip over* any features that had been previously searched in this search session, and will not

18   designate any such feature with the "MARKED" attribute.  *Id*.  The previously searched features

19   remain designated as "SELECTED," and are not again designated as "MARKED" for the next

20   round of searching.  *Id*.

21        Mr. Kimbrough further explains that a feature is qualified to be submitted for the program

22   to use for searching *only if* the feature's record is designated as MARKED.  Kimbrough Decl., ¶

23   23.  Accordingly, previously searched features which remain designated as SELECTED are

24   excluded and are not submitted again for searching.  *Id*.  Each set of search results returned for a

25   new feature is intersected into the main set.  Kimbrough Decl., ¶ 24.

26        No previously searched records are submitted again in the second round of searching

27   because such records are excluded by the program in the second round.  Kimbrough Decl., ¶ 25.

28   Accordingly, because nothing previously submitted is submitted again, no "resubmission" occurs

7

1    for the second round when the source code for the AMP Navigator demonstration program is run

2    and used.  *Id*.  Each qualifying feature is submitted, one at a time, for the program to use for

3    searching against the database and to retrieve results that match the feature.  Kimbrough Decl., ¶

4    26.  As two or more search terms are never submitted together for processing, no "concatenated

5    search" occurs when the source code for the AMP Navigator demonstration program is run and

6    used.  *Id*.

7          Mr. Kimbrough also explains that while the AMP Navigator demonstration program is

8    running, the user interface shows only the appearance of certain user interface elements, such as

9    radio buttons as selected or not selected and/or radio buttons made unselectable by graying them

10   out.  Kimbrough Decl., ¶ 27.  It is not possible to determine from observation of the user interface

11   whether "concatenated search" or "resubmission" is being performed.  *Id*.; Gafford Decl., ¶ 34

12   Defendants say that the '821 patent is "almost identical" to the AMP Navigator demonstration

13   program.  Motion at 8.  If they are implying anything other than that there may be a resemblance

14   between the two user interfaces, they are wrong.  What Defendants should have admitted is "the

15   methods of the reexamined claims of the '821 patent function very differently from the AMP

16   Navigator demonstration program, which in fact teaches away from those claims."  Gafford Decl,.

17   ¶ 32.

18         As discussed above, when the source code for the AMP Navigator demonstration program

19   is run and used, it is not capable of performing those functions.  *Id*.  If one were to take screen

20   shots of the user interface while the AMP Navigator demonstration program is running, it would

21   not be possible to determine whether or how search is being performed.  *Id*.

22         Opposing counsel created in 2009 screen shots for the prior *PartsRiver* litigation, which

23   are reproduced at pages 4 through 7 of the Motion and in Exhibit 24.  (Ex. 24 to the Claim

24   Construction Br.).  Those exhibits, however, prove nothing relevant regarding the functionality

25   performed by the software, as explained in Mr. Kimbrough's Declaration discussed above.

26         The screen shots on which Defendants rely show only what the demo screen shots looked

27   like when run by <u>counsel</u> in 2009, with no evidence of the behavior of the software on 1992

28   hardware; they do not reveal the processes at issue or what was done by the inventors before the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

8                      KELORA'S OPPOSITION TO DEFENDANTS'
                      CLAIM CONSTRUCTION BRIEF AND MOTION
                             FOR SUMMARY JUDGMENT

1  critical date. The screen shots do not show that the methods of **original** claims 1 and 2 were

2  performed, including step (h), at any time prior to the critical date or in connection with any offer

3  to sell.  The screen shots also do not show that the methods of the **reexamined** claims were

4  performed at any time before the critical date.

5      To the contrary, both the author of the source code and Kelora's expert agree that the

6  AMP Navigator demonstration program was not capable of "concatenation" nor of

7  "resubmission," as recited in the step (h) of the reexamined claims.  Kimbrough Decl., ¶¶ 8-27;

8  Gafford Decl., ¶¶ 25-33  The source code for the AMP Navigator demonstration program shows

9  that **the AMP Navigator demonstration program is not capable of performing all the steps of**

10  **either the original or reexamined claims**.

11      **C.**    **The Reexamined Claims At Issue Are Expressly Limited To Actions**
          **"Performed With A Server" And Require No Action On A User's Computer**
12
          The claims at issue are directed to methods that are expressly "performed with a server,"
13
    as stated in the preambles of independent claims 1 and 9.  Ex. 2, 1:27-28 (claim 1); 2:10 (claim
14
    9).  Defendants' arguments regarding divided infringement are legally incorrect and contrary to
15
    the Parties' agreement that the preambles are limiting.  Ex. 22, Appx. A.  Nothing in the claims,
16
    specification or file history supports the Defendants' assertion that, notwithstanding the limiting
17
    preambles providing that the methods are "performed with a server," the claims require
18
    "displaying," "revising" and  "resubmission" elements to be performed by a "client" computer.
19
    Motion at 9.
20
          The original claims were not limited to local embodiments or Internet embodiments and
21
    therefore encompassed all such embodiments.  To overcome the reexamination Examiner's
22
    rejections, the claims were narrowed to methods "performed with a server" in client-server
23
    network environments.  Whether there was a "divided infringement problem" with the original
24
    claims is irrelevant to the reexamined claims because, as noted above, the reexamined claims are
25
    expressly limited to functions performed "with a server."
26
          1.    Client-server Architecture Of Embodiments In An Internet Environment
27
          The Summary of the Invention explains that, "[i]t is a feature of the invention that the
28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

9       KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

process may be implemented in a server and client configuration for use on the Internet." Ex.2, 4:3-5; *see also* FIG. 25 (representation of a server and client configuration and the flow of data therebetween, 5:3-4); FIGs. 26 through 29 (illustrate various embodiments of feature screens of embodiments in an Internet environment, 5:5-28); FIGs. 30-35 (illustrate additional screens of embodiments in an Internet environment, 5:17-28).

The specification further states that, "In an embodiment of the invention in an Internet environment, there is a server computer 125 and a client computer 126. All of the program files and data files described in the local embodiment reside on the server 125." Ex. 2, 18:11-14. Thus, the server contains the logic and data disclosed with respect to the local embodiments.

The specification also discloses that the server in Internet embodiments includes additional features necessary for implementation in a client-server, networked environment. *See, e.g.,* Ex. 2, 18:17-26.   Accordingly, the server includes not just the logic described in the specification with regard to the local embodiment but also additional web server functionality and communication protocols to support operation in an Internet environment.  As discussed in the reexamination file history (*see below*), the client-server network architecture of the Internet embodiments requires significant changes in the implementation of the claimed methods.

> 2.  "Displaying," "Revising," and "Accepting A Second Selection Criteria [Comprising] A Resubmission" Are Functions Performed By The Server In Embodiments In An Internet Environment

As recognized at page 26 of Defendants' Motion, Kelora argued in reexamination that web server features distinguish the "server" of claims 1 and 9 from the prior art Granacki reference cited by the reexamination Examiner.  Reexam File History, Ex. 5 at pp. 10-11 (KS709-710).  In response to the reexamination Examiner's rejections based on the Granacki reference, it was explained:

> Assume a web server that is receiving search requests from any number of web users. If the web server has to identify and track individual sessions with each such user in order to know what criteria the user previously searched in earlier search iterations, there is clearly a tremendous overhead load on the web server to service such individual search sessions.  Under the claimed method, however, the web server need not track any previous searches or user sessions. Rather, when the latest or "second selection criteria" is accepted, the web server executes a corresponding search without caring about what search iterations the user may have performed previously. The "second selection criteria" includes the criteria

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

10

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    previously searched as well as additional, newly-selected criteria "from the revised
     feature screen." (Claim 1, step h). Thus, the result is the same as if the web server
2    were in a private sessions with the user and tracking the history and results of each
     iteration of the user's search.  However, the web server does not have to expend
3    the resources and bandwidth necessary to maintain a large number of individual
     user sessions. This is explained in the text of the patent as follows. "[T]he server
4    125 sends all of the information necessary to define the current subfamily 2 to the
     client 126. The information, therefore, need not be retained in memory on the
5    server 125. This particular feature renders it particularly appropriate for an Internet
     environment." (U.S. Patent No. 6,275,821, col. 18, line 41 to col. 19, line 11).

6    Reexam File History, Ex. 5 at pp. 10-11 (KS709-710).

7         Defendants improperly seek to conflate Internet embodiments with local embodiments by

8    citing the portion of the Specification stating, "A preferred embodiment of the Internet

9    embodiment of the electronic catalog application mirrors the user flow in the local embodiment as

10   much as possible."  Ex. 2, 18:33-35.  However, this is merely a non-limiting "preferred

11   embodiment," and the qualifier "as much as possible" reflects that exact duplication of the local

12   embodiment in an Internet environment is not contemplated, as the reexamination file history

13   attests.  The cited language certainly does not limit the claims to require action by the "client"

14   computer, as argued by the Defendants.

15              3.    Ministerial Functions Of The Client In Embodiments In An Internet
16                    Environment

17        In contrast to the claimed functions of a server in an Internet environment, the client in an

18   Internet environment merely reflects what is sent to it by the server and is, in effect, under control

19   of the server.  The specification explains this as follows:

20        The client 126 initiates a request to the server 125 for the electronic catalog
          searching application via the Internet.. . . When the family 1 or subfamily 2 is
21        chosen, the server 125 sends a feature screen status 127 to the client 126. The
          feature screen status 127 comprises a feature screen code, ScreenNum 102 in a
22        preferred embodiment, all features 5 appropriate to the feature screen 9 specified
          in ScreenNum 102, all available alternatives 7, all unavailable alternatives 8, and
23        the selection criteria 14. . . . The client 126 receives the feature screen status 127
          and displays the feature screen 9 accordingly.

24   Ex. 2, 18:41-63.  As made clear in the above passage, the functionality is executed on the server.

25   In full context, the client is "accordingly" reflecting, in a ministerial way, functions performed on

26   the server and sent by the server to the client.

27        The specification of the '821 patent expressly describes the function of "revising" the

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

feature screen, which Defendants conflate with the "displaying" function (Motion at 49), with reference to program logic as well as illustrative examples of revised feature screens resulting from the performance of the methods. Ex. 2, FIG. 24 5:1-2. The specification describes a "feature screen revision operation" that may include numerous aspects, all of which are preformed "by the system" and not by the user. Ex. 2, 17:41-18:10. And, as noted above, the specification states that in Internet embodiments, this logic "reside[s] on the server." Ex. 2, 18:13-14.

Nothing in the Specification limits the "revising" step of original claim 1 to being performed by the user's computer. On the contrary, the specification supports the construction based on ordinary and customary meaning that "revising said feature screen" means *any* of the described "revising" functionality. Accordingly, "displaying" and "revising" are performed by the server, which sends the feature screen status 127 to the client, the client then merely reflects what it receives from the server. Nick Arnett, on whom the Defendants' rely for testimony regarding alleged prior art, admitted in deposition that "displaying" is understood by those of ordinary skill in the art to include a function performed by web servers. Kleinman Decl. Ex. N, 95:4-13. The specification clearly enables this "displaying" functionality on the server, regardless of whether "displaying" functionality is also performed by a client connected to the server over a network.

4.   "Resubmission" Refers To What Is Accepted By The Server in Step (h), Not A Separate Function Performed By The Client

The Motion mischaracterizes "resubmission" as a verb in an effort to impose action by the client as an element of the methods that must be performed. The plain language of steps (h) of claims 1 and 9 and demonstrates that "resubmission" is a noun, referring to what is accepted by the server as part of the second selection criteria. As can be seen in the claim language, the references to "a resubmission" concern what is the server is "accepting" or "receiving and accepting." Given that the preambles expressly specify that the methods are "performed with a server," to impose a requirement of action by the client would improperly render superfluous the limitations in the preambles.

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

**D.     Narrowing Amendments In Reexamination Were Made To Distinguish The Claims From Cited Prior Art**

The Defendants' characterization of facts attempts to re-write history by alleging motivations for Kelora's actions that are untrue and unfounded, with no support in the factual evidence on record.  Defendants allege that "Kelora knew from the summary judgment motion [of the PartsRiver action] that the original claims had a 'divided infringement' problem . . . . Kelora apparently was concerned about these divided infringement problems, so during reexamination, Kelora amended claim 1, and added claim 9, to change the "accepting" step . . . [and to change] the 'revising' step in claim 9." Motion at 34.  These allegations regarding purported motivations for the amendments made in reexamination are incorrect and irrelevant.

The reexamination prosecution history clearly shows that claim 1 was amended and claim 9 was added to distinguish the claims from cited prior art in response to rejections by the Examiner, and not for any unfounded "divided infringement" allegations from the summary judgment briefing.  In fact, although Kelora's first two responses to the patent office's rejections were filed on June 5, 2009, and August 4, 2009, respectively --- after the opening brief for motion for summary judgment was served --- they attempted to overcome the rejections *without* any amendments whatsoever to Claim 1.  Decl. of Ascolese, Ex. 20, 5/28/2009 Motion (Docket No. 201); Ex. 21, 6/5/2009, PartsRiver's response to the Patent Office's non-final rejection (Docket No. 201);  Reexamination File History, Ex. 8, 8/4/2009 Response to the final rejection.

Only after repeated rounds of arguments with the patent office, including filing an Appeal before the Board of Patent Appeals and Interferences, wherein the patent office maintained the rejections of the original claims over the Granacki reference without explicit recitation of a client-server architecture and relevant interactions, was claim 9 added without amending Claim 1.  Reexam File History, Ex. 10-11.

In an Advisory Action in response to the addition of claim 9, the PTO at last indicated that the distinguishing features of claim 9 were patentable and could overcome Granacki, but effectively required that either claim 1 be canceled, or be amended likewise.  Reexam File History, Ex. 13.  With this indication that the Examiner would allow claim 1 if amended to

1    include the distinguishing features added to claim 9, claim 1 was amended.  Reexam File History,

2    Ex. 15.

3          Because the original claims were not limited to local or Internet embodiments and did not

4    specify whether steps were performed by a client or a server, the "accepting" and "revising" steps

5    in the original claims were not limited to location.  With respect to claim 9, wherein it is clarified

6    that the data for a feature screen is revised, displaying, as done by the server, necessarily involves

7    a determination of what data to display.  Thus, the amendment to claim 9 clarifies where that step

8    takes place, and thus narrows the scope.  More simply put, it does not enlarge the scope of the

9    reexamined claims to cover something that was not covered by the original claims.

10         **E.      Defendants' Divided Infringement Theories Cannot Negate Their Own**
           **Direct, Internal Use In Designing, Deploying, and Testing**

11         Defendants make a number of divided infringement arguments which are dependent upon

12   claim constructions which seek to negate the unambiguous plain language of the claims and

13   require some elements to be performed by a client or user notwithstanding the preambles limiting

14   the claims to functions "performed with a server."  Even if the claims are construed in this

15   fashion, Defendants still directly perform all elements of the claims in the course of their own

16   internal development, deployment, testing and use of the functionality accused of infringement.

17   *See, e.g.,* Hansen Decl., Ex A, Larson Depo., 56:5-58:20; Gafford Decl., ¶¶ 67.  Summary

18   judgment of non-infringement would be improper on this independent basis, even if the claims

19   are construed in the erroneous manner proposed by the Defendants.

20   **IV.    GENERAL LEGAL STANDARDS**

21         **A.      Claim Construction**

22         The construction of a patent is a matter of law for the Court. *Markman v. Westview*

23   *Instruments, Inc.*, 517 U.S. 370, 372 (1996). "It is a 'bedrock principle' of patent law that 'the

24   claims of a patent define the invention to which the patentee is entitled the right to exclude.'"

25   *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure*

26   *Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).

27   Accordingly, in construing disputed terms, the Court first looks to the words of the claims.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

14

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1   *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

2       Generally, the Court ascribes the words of a claim their ordinary and customary meaning.

3   *Id*. The Federal Circuit instructs that "the ordinary and customary meaning of a claim term is the

4   meaning that the term would have to a person of ordinary skill in the art in question at the time of

5   the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at

6   1313. However, "when a patent applicant surrendered claim scope during prosecution before the

7   PTO, the ordinary and customary meaning of a claim term may not apply."  *Reckitt Benckiser,*

8   *Inc. v. Watson Labs., Inc.*, 2011 U.S. App. LEXIS 13980, 12 (Fed. Cir. July 7, 2011), citing *Elbex*

9   *Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007).  To narrow the

10   scope of claim language, a prosecution history disclaimer must be "clear and unambiguous." *Id*.,

11   citing *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1373 (Fed. Cir. 2005).

12       Claims "must be read in view of the specification, of which they are a part." *Phillips*, 415

13   F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)

14   (en banc), aff'd, 517 U.S. 370 (1996)).  "Usually, [the specification] is dispositive; it is the single

15   best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.  Importantly, claims are

16   not limited to the preferred embodiment described in the specification. *See SRI Int'l v. Matsushita*

17   *Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc, plurality opinion).

18       **B.**    **Presumption Of Validity**

19       "Under § 282 of the Patent Act of 1952, "[a] patent shall be presumed valid" and "[t]he

20   burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting

21   such invalidity." 35 U.S.C. § 282. Section 282 requires an invalidity defense to be proved by clear

22   and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (U.S. 2011).

23   This presumption is based on "'the basic proposition that a government agency such as the [PTO]

24   was presumed to do its job'." *Id*., quoting *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*,

25   725 F.2d 1350, 1359 (Fed. Cir. 1984).  The PTO is presumed to have "examiners who are

26   assumed to have some expertise in interpreting the references and to be familiar from their work

27   with the level of skill in the art and whose duty it is to issue only valid patents."  *Am. Hoist &*

28   *Derrick* at 1359.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

15

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

### C.     Obviousness

Title 35 U.S.C. § 103(a) provides, "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the invention was made."  35 U.S.C. § 103(a), *KSR In't Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007).  To determine obviousness, "the invention must be considered as a whole and the claims must be considered in their entirety." *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1479 (Fed. Cir. 1998).

### D.     Non-infringement

"Infringement is assessed by comparing the accused device to the claims; the accused device infringes if it incorporates every limitation of a claim, either literally or under the doctrine of equivalents." *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005) (alterations omitted).

### E.     Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

16

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

2       Where the moving party bears the burden of proof on an issue at trial, it must, in order to

3   discharge its burden of showing that no genuine issue of material fact remains, make a prima

4   facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48

5   F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if

6   uncontroverted at trial, would entitle it to prevail on that issue. *Id.*; *see also Int'l Shortstop, Inc. v.*

7   *Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). Once it has done so, the non-moving party

8   must set forth specific facts controverting the moving party's prima facie case. *UA Local 343*, 48

9   F.3d at 1471. The non-moving party's "burden of contradicting  [the moving party's] evidence is

10  not negligible." *Id*. This standard does not change merely because resolution of the relevant issue

11  is "highly fact specific." *Id.*

12      Where the moving party does not bear the burden of proof on an issue at trial, it may

13  discharge its burden of production by either of two methods. *Nissan Fire & Marine Ins. Co., Ltd.,*

14  *v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). The moving party may produce evidence

15  negating an essential element of the nonmoving party's case, or, after suitable discovery, the

16  moving party may show that the nonmoving party does not have enough evidence of an essential

17  element of its claim or defense to carry its ultimate burden of persuasion at trial.  *Id.*

18  **V.      ARGUMENT**

19      **A.      Kelora's Proposed Claim Constructions**

20      Defendants argue that their obviousness theories can prevail "regardless of whether *any* of

21  Kelora's claim constructions are adopted." *See* Motion at 16.  Accordingly, the Court should

22  adopt Kelora's proposed constructions in its summary judgment analysis.  As explained more

23  fully below, Kelora's proposed constructions are legally correct in view of the intrinsic and

24  extrinsic evidence, whereas the Defendants' proposed constructions are legally erroneous.  In

25  summary, Kelora proposes the following constructions for claim terms related to the issues raised

26  in Defendants' Motion:

27          1.      The term "server" in the preambles of claims 1 and 9 means: "a web
                    server"

28

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

17

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

2.    The term "displaying" means: "The action of sending a page to a display surface or device for viewing"

3.    The term "accepting" means: "accepting selection criteria for processing"

4.    The term "selection criteria" means: "a signal including one or more alternatives to be used in search operations"

5.    With respect to the terms "revising," "determining," "providing a computer readable data file of stored information," and "reading said data file": The ordinary and customary meaning of these terms is readily apparent, requiring no construction by the Court.

**B.    Collateral Estoppel Does Not Apply To The Reexamined Claims Because They Are Not Identical To The Original Claims**

Contrary to the Defendants' arguments, collateral estoppel does not preclude Kelora's arguments that the Draft AMP Navigator Proposal did not constitute a commercial offer to sell the methods of the reexamined claims. Collateral estoppel, or issue preclusion, bars re-litigation of issues when (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). However, "it is inappropriate to apply collateral estoppel when its effect would be unfair." *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 873 F.2d 229, 234 (9th Cir. 1989). Because the reexamined claims are not identical to the original claims, this Court previously denied the collateral estoppel based summary judgment sought by eBay and Microsoft. Docket No. 70 in Case No. 10-4947.   Indeed, because each claim of a patent is presumed valid independently of the validity of other claims, questions of invalidity generally require a court to consider patent claims individually. 35 U.S.C. § 282, *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1370-71 (Fed. Cir. 2003). Collateral estoppel cannot relieve Defendants of their burden to prove the **reexamined** claims are invalid independent of the prior ruling.

**C.    Defendants Have Not Shown They Are Entitled To Summary Judgment That Claims 1–4 and 9 Are Obvious**

As explained further below, an objective analysis of the functionality of the AMP Navigator demonstration program proves that **no combination** of the AMP Navigator

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

18

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    demonstration program with **any** of the prior art references cited in the Defendants' Motion meets

2    all of the limitations of the reexamined claims.  Regardless of how the AMP Navigator

3    demonstration program is combined with any of the Defendants' prior art, there is no teaching of

4    a server "accepting a second selection criteria ... [comprising] a resubmission" as required in step

5    (h) of reexamined claims 1 and 9.  This fact is fatal to the Defendants' obviousness arguments.

6         The Court should reject Defendants' attempt to bootstrap their argument with this Court's

7    prior invalidity ruling in the *PartsRiver* matter into this case.  The original claims of the '821

8    patent at issue in that ruling do not exist anymore and are not at issue here.  The Court has already

9    denied summary adjudication that the reexamined claims are identical in scope to original claims

10   1 and 2, ruling that the reexamined claims are not invalid as a result.  Docket No. 70 in Case No.

11   10-4947, p. 6.  In view of the high burden Defendants bear on the issue of obviousness and

12   Kelora's entitlement to the benefit of all factual inferences, Defendants' attempt to prove

13   obviousness through shortcuts cannot succeed.

14        While obviousness is a question of law, it depends on several underlying factual inquiries:

15        Under § 103, the scope and content of the prior art are to be determined;
          differences between the prior art and the claims at issue are to be ascertained; and
16        the level of ordinary skill in the pertinent art resolved. Against this background the
          obviousness or nonobviousness of the subject matter is determined. Such
17        secondary considerations as commercial success, long felt but unsolved needs,
          failure of others, etc., might be utilized to give light to the circumstances
18        surrounding the origin of the subject matter sought to be patented.

19   *KSR*, 550 U.S. at 406, quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

20        Following these principles here is difficult because the claimed subject matter involves

21   more than the simple substitution of one known element for another or the mere application of a

22   known technique to a piece of prior art ready for the improvement.  *KSR*, 550 U.S. at 417-18.

23   With no expert testimony to aid the Court's understanding, Defendants ask the Court to look to

24   interrelated teachings of multiple references; the effects of demands allegedly known to the

25   design community or present in the marketplace; and the background knowledge possessed by a

26   person having ordinary skill in the art, all in order to determine whether there was an apparent

27   reason to combine the known elements in the fashion claimed by the patent at issue.  *Id.*, see also

28   *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) (To facilitate review, this analysis must be made

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

19                                    KELORA'S OPPOSITION TO DEFENDANTS'
                                      CLAIM CONSTRUCTION BRIEF AND MOTION
                                      FOR SUMMARY JUDGMENT

1    explicit.).

2         In contrast, Kelora provides herewith expert testimony by Mr. Gafford to aid the Court's

3    understanding of these complicated issues.  In this summary judgment context, the Court must

4    regard Mr. Gafford's evidence as true and draw all reasonable inferences in favor of Kelora

5    regarding the factual inquiries underlying the obviousness analysis. *Celotex*, 477 U.S. at 324;

6    *Eisenberg*, 815 F.2d at 1289; *Matsushita*, 475 U.S. at 587; *Intel*, 952 F.2d at 1558.  In light of

7    Mr. Gafford's testimony, summary judgment of obviousness must be denied.

8              1.    The Third *Graham* Inquiry: The Parties Dispute The Proper Level of
                     Ordinary Skill
9
10        As a preliminary matter, Kelora agrees with Defendants' statement that "a low level of

11   skill in the art" (Motion at 29) is appropriate, but Kelora disputes Defendants' assertion that this

12   level corresponds to "a person with a moderate level of computer science experience acquired

13   through either formal or informal training."  Rather, as Kelora's expert Mr. Gafford has opined, a

14   person of ordinary skill as of October 14, 1994, would have had 2-3 years of experience or

15   education with computer programming and familiarity with standards that had been established at

16   the time.  Gafford Decl., ¶¶ 60-64.

17        Such a person may have had general awareness of but little experience with early draft

18   proposals of the HTTP protocol and/or the HTML specification, which were not accepted as

19   standard until after October 14, 1994, and with the NCSA Mosaic browser, of which version 1.0

20   for Windows was released around December 1993.  *Id.*  Such a person would have had

21   rudimentary knowledge of static web pages but no substantial experience with programming

22   dynamic web content.  *Id.*  Such a person would not have had any knowledge of HTML 2.0,

23   published as IETF RFC 1866 in November 1995, nor of any other standards or techniques

24   relating to the HTTP protocol or the HTML specification that were not accepted as standard until

25   after October 14, 1994.  *Id.*

26        Kelora expressly disputes that the authors of the references on which Defendants rely,

27   including Messrs. Berners-Lee, Arnett, and Ng, were persons of ordinary skill, as those

28   individuals were experts with skill much higher than those of ordinary skill.  Gafford Decl., ¶ 64.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

20

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

2.     The First *Graham* Inquiry: The Parties Dispute The Scope And Content Of The Prior Art

The first inquiry in the obviousness analysis is to determine the scope and content of the prior art. *KSR*, 550 U.S. at 406, *Graham*, 383 U.S. at 17-18. Obviousness is not based on a textual comparison of the words of the claim to the word of relevant prior art. It "requires comparison of the claimed invention to the relevant prior art." *Torphram Inc., v. Ranbaxy Pharmaceuticals, Inc.*, 336 F.3d 1322, 1327 (Fed. Cir. 2003) (citing *In re Ochiai*, 71 F.3d 1565, 1569 (Fed. Cir. 1995)). There are genuine disputes as to both what references qualify as prior art and what is taught by the cited references.

a.     It Is Disputed Whether The AMP Navigator Demonstration Program Is Prior Art Under Section 102(b) With Respect To The Reexamined Claims

The AMP Navigator demonstration program is asserted to be an on-sale bar to patentability under section 102(b). Although this Court previously held that the AMP Navigator demonstration program was a bar to the patentability of claims directed to the local embodiment, it is not a bar to the patentability of the reexamined claims. The reexamined claims are directed to the Internet embodiment where all of the claimed elements are performed "with a server" connected to a client computer through a computer network. The AMP Navigator is not available under section 102(b) for many reasons, including the fact that it has no server functionality whatsoever and could not be used to perform critical aspects of the inventions claimed in the patent, all of which require accepting a resubmission at the server of "the alternatives of the first selection criteria plus [or "along with" in Claim 9] at least one alternative selected from the revised feature screen"

To establish an on-sale bar, it must be shown that the device sold "fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art." *Allen Engineering Corp. v. Bartell Industries*, 299 F. 3d 1336, 1352 (Fed. Cir. 2002); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 68 (1998). In the present case, this means that to invalidate any claim set forth in the reexamination certificate for the '821 patent, the Defendants must show that the AMP Navigator demonstration program "embodied all of the limitations of

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1    that claim or would have rendered that claim obvious." *Allen Eng'g*, 299 F.3d at 1352.

2          In addition, the Defendants must also prove the facts underlying both prongs of the *Pfaff*

3    test by clear and convincing evidence. *Id.* Specifically, they must show that, before the critical

4    date of October 13, 1993, the AMP Navigator demonstration program was both (1) the subject of

5    a commercial offer for sale not primarily for purposes of experimentation and (2) ready for

6    patenting. *Allen Eng'g* 299 F.3d at 1352; *Pfaff*, 525 U.S. at 67. The first prong of this test

7    involves a determination of whether a commercial offer for sale has occurred, applying traditional

8    contract law principles. *Id.*

9          The second prong of the Pfaff test may be satisfied "by proof of reduction to practice

10   before the critical date; or by proof that prior to the critical date the inventor had prepared

11   drawings or other descriptions of the invention that were sufficiently specific to enable a person

12   skilled in the art to practice the invention." *Allen Eng'g* 299 F.3d at 1352; *Pfaff*, 525 U.S. at 67-

13   68. The Federal Circuit has described the assessment of whether a device sold was an

14   embodiment of a claimed invention as "the first determination" in the on-sale bar analysis. *Id.*

15   Here, the showing has not been made by the Defendants.

16         Critical to the present analysis is the Federal Circuit's recent holding that, "[w]hile the

17   invention need not be ready for patenting at the time of the offer . . . there is no offer for sale

18   until such time as the invention is conceived." *August Tech. Corp. v. Camtek, Ltd.*, 2011 U.S.

19   App. LEXIS 17451, 25 (Fed. Cir. Aug. 22, 2011) (emphasis added). *Pfaff* states that the "word

20   'invention' in the Patent Act unquestionably refers to the inventor's conception." *Id.*, citing *Pfaff*,

21   525 U.S. at 60. Therefore, "an invention cannot be offered for sale until its conception date." *Id.*

22   Even if the inventor offers to sell something that is later conceived, prior to conception any such

23   offer is "merely offering to sell an *idea* for a product." *Id.* at 26.

24         It is undisputed that the reexamined claims of the '821 patent were not conceived until

25   after the critical date. Defendants argue that Kelora cannot establish conception or diligent

26   reduction to practice before the October 14, 1994, filing date. Motion at 19 footnote 6. Kelora

27   contends that conception occurred during or before the second quarter of 1994. Ex. 15 at p. 5

28   (Kelora's response to eBay interrogatory 1). Drawing all reasonable inferences in favor of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

22

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1   Kelora, conception did not occur prior to the critical date of October 13, 1993. *Celotex*, 477 U.S.

2   at 324; *Eisenberg*, 815 F.2d at 1289; *Matsushita*, 475 U.S. at 587; *Intel*, 952 F.2d at 1558.

3       In *August Tech.*, the Federal Circuit cited its prior decision in *Sparton Corp. v. United*

4   *States*, 399 F.3d 1321, 1324 (Fed. Cir. 2005), which found it "illogical" to conclude that an

5   invention was the subject of a commercial offer for sale before it was conceived.  In *Sparton*,

6   Sparton entered a contract with the Navy to sell sonobuoys incorporating dual-depth operating

7   capability into an existing SSQ-53 design. *Id*., citing *Sparton*, 399 F.3d at 1323. There was no

8   dispute that the product which was the subject of the contract was not the patented invention. *Id*.

9   The fact that the patented invention later was included in the delivered devices after the critical

10  date did not change the result. *Id*.  *Sparton* offered and contracted to sell the Navy "something

11  entirely different" than the patented design and therefore the first prong of the *Pfaff* test was not

12  met.  *Id*.

13      Here, the AMP Navigator demonstration program at issue in the Court's prior invalidity

14  ruling was "something entirely different" than the patented invention at issue here.  *Id*.  In this

15  case, as in *August Tech*. and *Sparton*, it would be "illogical" to conclude that the inventions of the

16  reexamined claims, which were not conceived until after the critical date, were the subject of the

17  offer for sale at issue in the Court's prior invalidity ruling.  *Id*.

18      Accordingly, the offer for sale at issue in the Court's prior invalidity ruling was not an

19  offer of the patented invention of the reexamined claims.  Because conception of the reexamined

20  claims did not occur until after the critical date, that offer for sale does not meet either prong of

21  the *Pfaff* analysis and is therefore not prior art under Section 102(b) with respect to the

22  reexamined claims.  Because the AMP Navigator demonstration program is not prior art under

23  Section 102 (b) relative to the claims at issue here, it is not prior art for purposes of Section 103,

24  either.

25      Further, when the claims at issue involve patented methods, as here, the Federal Circuit

26  has held that the *Pfaff* test can be satisfied under two alternative theories:  (1) a showing that the

27  patentee made a commercial offer before the critical date to perform the patented method; and (2)

28  a showing that the patentee in fact performed the patented method for a promise of future

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    consideration.  *See Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1162 (Fed. Cir.

2    2006).  Defendants have made neither showing with respect to the reexamined claims.

3                    b.       It Is Disputed Whether *Arnett*[2] Is Prior Art Under Section 102(a)

4            The inventions of the reexamined claims were conceived no later than during or before the

5    second quarter of 1994.  Ex. 15, Kelora's Interrogatory Responses, p. 5.  *Arnett* bears the date

6    May 16, 1994.  Arnett Decl., Exs. A, C.  Viewing the evidence in the light most favorable to

7    Kelora, it is genuinely disputed whether *Arnett* was known to others or publicly available as a

8    printed publication before the date of invention of the reexamined claims, as Defendants must

9    prove by clear and convincing evidence to establish that Arnett is prior art under Section 102(a).

10   *Matsushita*, 475 U.S. at 587; *Intel*, 952 F.2d at 1558.

11                   c.       The First *Graham* Inquiry: Disputes Regarding The Content Of
                             Defendants' Cited References
12
13                           i.       The Content Of The AMP Navigator Demonstration
                                     Program Is Disputed Even If It Is Considered Prior Art

14           As discussed above, both the author of the source code for the AMP Navigator

15   demonstration program and Kelora's expert Mr. Gafford have concluded that the AMP Navigator

16   demonstration program was not capable of any client-server functionality, was not capable of

17   "concatenation," and was not capable of "accepting .... a resubmission" as recited in the step (h)

18   of the reexamined claims.  Kimbrough Decl., ¶¶ 8-27; Gafford Decl., ¶¶ 25-33.

19           Defendants' only evidence of the teachings of the AMP Navigator demonstration program

20   are the screenshots created in 2009 <u>by their counsel</u>.  Ex. 24; Chandler Decl., ¶ 6.  Defendants

21   have offered no competent fact or expert testimony to corroborate the functionality they allege

22   was present based solely on the screenshots.  However, as the author of the source code, Mr.

23   Kimbrough, explained, it is not possible to determine from observation of the user interface

24   whether "concatenated search" or "resubmission" is being performed. Kimbrough Decl., ¶ 27.

25   Furthermore, when the source code for the AMP Navigator demonstration program is run and

26   used, it is not capable of performing concatenated search or resubmission functions.  *Id*.  The

27
28   ――――――――――――――――――――
     [2] This reference also was not included in Defendants' invalidity claim charts as required under
     Patent L.R. 3-3(c).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

24

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    screenshots taken by Defendants' counsel <u>more than a decade after the relevant time</u> do not show

2    whether or how search is being performed in the running AMP Navigator demonstration program.

3    *Id*.  They also do not show what methods were performed or offered at the relevant time.

4         The screen shots on which Defendants rely show only what the demo screen shots looked

5    like when run by counsel in 2009; they do not reveal the processes at issue or what was done by

6    the inventors before the critical date. The screen shots do not show that the methods of **original**

7    claims 1 and 2 were performed, including step (h), at any time prior to the critical date or in

8    connection with any offer to sell.  The screen shots also do not show that the methods of the

9    **reexamined** claims were performed.[3]

10                    ii.      The Parties Dispute The Content Of *Suzuki*

11        Defendants rely on Suzuki for their assertion that "it was well known that a database on a

12   local computer could be adapted to operate in a client-server arrangement."  Motion at pp. 20-

13   22:18-23:13.  However, *Suzuki* does not teach anything about a client-server architecture: it does

14   not use the terms "client" or "server" and does not teach anything about the communication

15   between a client and a server.  Gafford Decl., ¶ 41.

16        The *Suzuki* reference focuses exclusively on the appearance of the user's screen, discloses

17   no client-server architecture other than the possibility of a remote database, and discloses nothing

18   of the underlying communication between a user and a remote database.  *Id*.   Suzuki is concerned

19   with identifying files that are associated with specified keywords.  A user searches for a first

20   keyword and the system finds all the matching files, identifies the keywords associated with those

21   files, and presents the user with a list of those keywords.  *Id*.  If the user selects a keyword from

22   this list, the system performs a second search and presents the user with a second updated list of

23   keywords associated with those files that match both of the previously selected keywords.  *Id*.

24        *Suzuki* is also silent about resubmission.  *Id*.  Defendants rely on *Suzuki* to teach

25   resubmission as claimed.  Motion at 23-24.  As Defendants point out, *Suzuki* explains: "In the

26   ────────────────

27   [3] Anticipating that Defendants will challenge this argument regarding the screen shots submitted
     in Mr. Chandler's Declaration supporting this Motion, Kelora has requested Mr. Chandler's
28   deposition before Kelora's sur-reply is due.  To date, Mr. Chandler has not agreed to be deposed
     and a motion to compel is likely.

KELORA'S OPPOSITION TO DEFENDANTS'
                        CLAIM CONSTRUCTION BRIEF AND MOTION
                        FOR SUMMARY JUDGMENT

information above, the symbol '∩' is one symbol used for a logical operation and is a mark which means 'AND' (the logical multiplication operation)."  Motion at 23 (quoting *Suzuki*, Leventhal Decl. Ex. 2. at 3). But the excerpt quoted by Defendants does *not* describe resubmission.  It does not even describe concatenation.  It states that "search processing is performed using a *logical expression* … in which search keywords … are added to the previously inputted search keyword…." (emphasis added)  It is not stated that this "logical expression" is a search criteria which is accepted by a server. *Suzuki* teaches only that at some point in the data flow of *Suzuki* (it is silent as to when), the results of searching in the database on separate keywords are intersected, as is done, for example, in the AMP Navigator demonstration program.  This portion of *Suzuki* says nothing about where, in a second query, the various keywords are sourced from or even if there is an *actual* second query that contains both previously selected keywords and newly selected keywords.  It is silent as to any resubmission.  Gafford Decl., ¶ 42.

"[W]ithout reinputting" on page 9 of *Suzuki* is also not proof that the original search string is resubmitted; it only address the convenience for the user to not re-type a query term. Gafford Decl., ¶ 42.

        iii.        The Parties Dispute Whether *Berners-Lee*, *Ng*, and *PC Magazine* Teach A Server Accepting A Resubmission.

Defendants add references relating to a stateless HTTP server, such as those by Berners-Lee, to show a web server and client/browser architecture, which are absent in a combination of the AMP Navigator demonstration program and Suzuki.  Gafford Decl., ¶ 45.  The *Berners-Lee* references discuss the World Wide Web generally and statelessness in the context of the HTTP protocol.  *Id.*.  However, the *Berners-Lee* references do not teach a server  "accepting" a "resubmission" as required in step (h) of claim 1 and step (h) claim 9 of the reexamined '821 patent. Id..  Defendants do not state otherwise.

Defendants rely on Jason Ng's references to teach web access to a database, and the PC Magazine reference to teach the advantages of a client-server arrangement.  Motion at 21.  Again, neither *Ng* nor *PC Magazine* teach a server  "accepting" a "resubmission" as required in step (h) of claim 1 and step (h) claim 9 of the reexamined '821 patent.  Gafford Decl., ¶ 46.  And again,

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

Defendants do not state otherwise.

iv.     The Parties Dispute the Content of *Arnett*

(a)     *Arnett* Does Not Teach A Server "Accepting" "Selection Criteria … Comprising A Resubmission'

Defendants also rely on a posting to a listserve by Nick Arnett. Motion at 23-24. Defendants assert that *Arnett* teaches not just that resubmission as claimed was obvious, but that it was "preferred" in web applications. Motion at 23-24. Defendants' arguments are mistaken. The evidence, in fact, shows that *Arnett* is speculative and in fact teaches away from "accepting ... a resubmission" as claimed in the reexamined claims. "A reference, however, must have been considered for all it taught, disclosures that diverged and taught away from the invention at hand as well as disclosures that pointed towards and taught the invention at hand." *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 296 (Fed. Cir. 1985), citing *W.L. Gore v. Garlock*, 721 F.2d 1540, 1550 (Fed. Cir. 1983)).

As is further explained in the declaration of Kelora's expert witness Mr. Gafford, *Arnett* shows that there was no general agreement on whether, where, and how to store and retrieve state when using the HTTP protocol. Gafford Decl., ¶ 21. In Arnett, numerous different and sometimes contradictory approaches are advocated. *Id.*, ¶¶ 21-22. Further, the discussions of these different approaches are at a high level of abstraction, leaving unaddressed both the details of implementation and important fundamentals such as when any information would be stored, where it would be stored, under what circumstances it would be stored, and under what circumstances it would be accessed. *Id.*

In Arnett, the author first teaches passing back "to the server a set of parameters that describes the previous search results, to which new narrowing or widening parameters can be added," and then immediately argues against using this approach, stating, "I can imagine that eventually the results might become quite complex, using up a lot of bandwidth to pass," which suggests that the author does not know whether the approach may succeed or fail. Gafford Decl., ¶ 22; Arnett Decl., Ex. A, ¶¶ 5, 8. Jared Rhine is quoted as advocating the use of a stateful protocol in situations where previous search results need to be kept, with which Arnett disagrees,

1   stating, "I'd much rather predict that performance will improve than to bet that we can guess what

2   kind of statefulness should be built into the server."  Gafford Decl., ¶ 22; Arnett Decl., Ex. A, ¶¶

3   6, 8.  Accordingly, Arnett itself highlights the possibility of multiple opposing courses of action

4   for solving a problem of keeping previous search results.  Gafford Decl., ¶¶ 21-22.

5         *Arnett* would not teach one of skill in the art at the time what to do, much less how to do

6   it, and therefore puts nothing relevant in the possession of the public as prior art.  In the portions

7   of *Arnett* that do mention sending something to a server, it is not at all clear from *Arnett* what it is

8   that is being sent, but it certainly is not selection criteria as claimed in the reexamined '821

9   patent.  Gafford Decl. at ¶ 23.  Mr. Arnett's own endeavors are for a method for keeping track of

10  expansions of subheadings in an outline interface in a stateless environment and not for

11  performing guided parametric searching.  *Id*.; Arnett Decl., Ex. A, ¶2.  When *Arnett* discusses

12  "passing parameters, which are kept by the *browser* and re-sent" (emphasis original), it is

13  entirely unclear which "parameters" he refers to.  *Id*.  *Arnett* mentions two kinds of parameters:

14  parameters for whether a previously expanded subheading remains expanded when a user selects

15  a new subheading to expand in a hierarchical outline, or "parameters that describe the previous

16  search results" or "a description of [a query]. . ."  *Id*. (quoting Arnett Declaration, Ex. A, ¶5, 7).

17  *Arnett* does not disclose what "parameters" are, and there is no basis to conclude that either of

18  such parameters are the "selection criteria" as claimed in claims 1 and 9 of the reexamined '821

19  patent.  *Id*.

20        Moreover, there is no indication in *Arnett* of where the "parameter" information would be

21  stored, how it is "kept by the *browser*," or how the browser would know to retrieve it, and how

22  it is "re-sent."  and Defendants have provided no evidence that such details are within the

23  knowledge of a person of ordinary skill in the art before October 14, 1994.  Gafford Decl. at ¶ 25.

24        Thus, *Arnett* actually *teaches away* from modifying a server so that it behaves as claimed

25  in the reexamined '821 patent.  *Id*. at ¶ 52.  During his deposition, Mr. Arnett acknowledged that

26  the server was not part of his solution.  *Id*. at ¶ 52; Kleinman Decl. Ex. N, 81:23-25.  *Arnett* itself

27  states "I see the need for improvement of the browsers' ability to keep track of queries and such,

28  based on interaction, *rather than a need to change the servers' capabilities in that area*."  *Id*. at ¶

28

1   52 (emphasis added).  In contrast, the '821 patent claims are performed by the server.

2                    v.      The Parties Dispute The Content of the HIBROWSE
                             References

3

4        The Defendants' characterization of the HIBROWSE program as described in the

5   publications of *Pollitt*, *Ellis*, and *Pollitt 1994* as a "hypertext-based" is misleading because to the

6   extent that "hypertext" was used in a HyperCard program, such hypertext bears only a tenuous

7   relationship to the HTML specification or the HTTP protocol.  Gafford Decl. at ¶ 57.

8   "Hypertext" as used in the context of the HyperCard development environment relates to the

9   general meaning of linking words, virtual index cards, or multimedia to navigate from one

10  HyperCard "card" to another "card.," where all such "cards" reside on a single local machine.  *Id*.

11       Also, these references do not establish anything about what logic is present in the client

12  and what is present in the server.  *Id*. at ¶ 59.  Thus, they do not establish the accepting of a

13  second selection criteria by a server.  *Id*.

14       Because they do not disclose that he HIBROWSE program employ a web server, and do

15  not disclose that there is any communication via the HTTP protocol, the references, contrary to

16  the assertions of Defendants, provide no evidence of any motivation to modify the AMP

17  Navigator demonstration program to be deployed in a web environment.  *Id*. at ¶ 60.

18              3.      The Second *Graham* Inquiry: The Parties Dispute The Differences
                       Between The Prior Art And The Reexamined Claims

19                     a.      Defendants Fail To Compare The AMP Navigator Demonstration
                               Program To The Properly Construed Reexamined Claims On a
20                             Claim-by-Claim and Element-By-Element Basis

21       It is a fundamental that "the invention must be considered as a whole and the claims must

22  be considered in their entirety." *Kahn*, 135 F.3d at 1479.   Defendants have made no attempt to

23  ascertain "differences between the prior art and the claims at issue," as Supreme Court precedent

24  requires.  *KSR*, 550 U.S. at 406, *Graham*, 383 U.S. at 17-18.

25       The Federal Circuit has emphasized the important role of expert testimony in carrying out

26  a proper invalidity analysis.  *See Schumer v. Lab. Computer Sys., Inc*., 308 F.3d 1304, 1315 (Fed.

27  Cir. 2002) ("Typically, testimony concerning anticipation must be testimony from one skilled in

28  the art and must identify each claim element, state the witnesses' interpretation of the claim

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

29          KELORA'S OPPOSITION TO DEFENDANTS'
            CLAIM CONSTRUCTION BRIEF AND MOTION
            FOR SUMMARY JUDGMENT

1   element, and explain in detail how each claim element is disclosed in the prior art reference.");

2   *see also Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1369 (Fed. Cir. 2003);

3   *Dana Corp. v.Am. Axle Mfg., Inc.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002).

4          The Defendants fail to meet their burden of proof.  They fail to provide any expert opinion

5   on the functionality of the software or source code of the AMP Navigator demonstration program

6   and the teachings of the other references on which they rely.  Moreover, rather than consider the

7   reexamined claims in their entirety, taking into account the contours of the new, narrower scope

8   of the reexamined claims as compared to the original claims, the Defendants' obviousness

9   theories improperly ignore how the amendments to the claims in reexamination affected the

10  meaning of various terms and elements, including some terms that were textually unmodified

11  from the original claims.

12         Nonetheless, Defendants summarily conclude that because the AMP Navigator

13  demonstration program (which was never itself on sale, as discussed above) was held to be part of

14  an on-sale bar of the original claims, "the only remaining question before the Court is whether it

15  would have been obvious to modify the AMP Navigator to include the additional limitations

16  added to independent claims 1 and 9 during reexamination, namely (i) a client-server arrangement

17  and (ii) a resubmission requirement for iterative searches."  Motion at 17.  Thus, for most of the

18  elements and terms of the reexamined claims, Defendants make no showing that they are taught

19  by the prior art.  Instead, they limit their efforts to *their gloss* on the textual amendments made

20  during reexamination.  They assume that any language which appeared in the original claims and

21  the reexamined claims has the same meaning in both sets of claims and was taught by the AMP

22  Navigator demonstration program.

23         Defendants thus avoid discussing several differences between the reexamined claims and

24  the original claims, differences which are not limited to mere textual changes.  First, the

25  amendments to the preamble of claim 1, limiting the claimed method to one "performed with a

26  server connected to a client computer through a computer network," fundamentally changed the

27  architecture of the claimed methods and necessarily narrowed the meaning of various terms.  For

28  example, it restricted each step to being performed by a server.  Although Defendants argue that

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1   client-server architectures were known, they do not comment at all on the particular client-server

2   architecture claimed.  Defendants also fail to adequately account for the difference in how

3   "second selection criteria" is defined in the original and reexamined claims.  They repeatedly

4   claim that the prior art teaches a general notion of resubmission, but they do not address the

5   implications of the addition of the resubmission element on the methods "performed with a

6   server" of the reexamined claims.

7          In contrast, Kelora submits herewith the declaration of inventor Mr. Kimbrough, the

8   author of the source code relied upon by the Defendants, as well as the declaration of expert

9   witness Mr. Gafford, both of which establish, at minimum, genuine disputes regarding whether

10  the source code and screen shots of the AMP Navigator demonstration program disclose the

11  current element (h) of claim 1 or element (h) of claim 9.  Indeed, they demonstrate unequivocally

12  that the AMP Navigator demonstration program did *not* disclose this *and* other elements of

13  reexamined claims 1 and 9.  They further demonstrate that the cited references, alone or in

14  combination, fail to disclose elements of reexamined claims 1 and 9.

15          b.      <u>Defendants Have Not Shown That The Elements Of Claim 9 Are
                    Present In The Prior Art And Thus Have Not Analyzed The</u>
16                  <u>Differences Between Their Cited References And Claim 9</u>

17          Claim 9 is narrower in scope than Claim 1.  For example, steps (g) and (k) of Claim 9

18  refer to the server "revising said data for said feature screen to indicate the available

19  alternatives…" whereas Claim 1 recites "revising said feature screen to indicate the available

20  alternatives."  Similarly and illuminatingly, step (c) of Claim 9 recites "displaying a feature

21  screen … wherein data is output to a client computer via said computer network" whereas the

22  corresponding step of Claim 1 recites "displaying a feature screen."   Claim 9 specifically

23  contemplates that the displaying step also involves the transmission of data that might not be

24  displayed but which is indicative of available alternatives.  Defendants have not mapped these or

25  any other elements of Claim 9 to the cited references.

26          c.      <u>The Parties Dispute Whether Any Combination of AMP Navigator
                    Demonstration Program With *Suzuki*, *Arnett*, or *Berners-Lee* Teach</u>
27                  <u>The Methods of the Reexamined Claims</u>

28                  i.      <u>"Server" In The Claims Means "Web Server"</u>

31          KELORA'S OPPOSITION TO DEFENDANTS'
            CLAIM CONSTRUCTION BRIEF AND MOTION
            FOR SUMMARY JUDGMENT

1   The reexamined claims of the '821 patent are directed to a web server, and not to a

2   database server, even if the disclosure of *Suzuki* is considered to teach such, which Kelora does

3   not concede.  An exception to the rule that a claim term will carry its ordinary meaning arises

4   when the intrinsic evidence shows that the patentee distinguished that term from prior art on such

5   basis and expressly disclaimed subject matter.  *See Hall Company, Inc. v. Atlanta Corrugating,*

6   *LLC*, 370 F.3d 1343, 1353 (Fed. Cir. 2004), citing *CCS Fitness, Inc. V. Brunswick Corp.*, 288

7   F.3d 1359, 1366-67 (Fed. Cir. 2002).  During reexamination, the "server" of the claims was

8   expressly characterized as a "webserver" to distinguish Granacki.  Reexam File History, Ex. 5 at

9   pp. 10-11 (KS709-710). This disclaimer limits the "server" in the claims to a "web server."  In

10  their Motion, Defendants even quote the above-referenced argument.  Motion at 26.  Accordingly,

11  the "server" in the claims should be construed to mean "web server."

12              ii.      Combination Of Suzuki With The AMP Navigator
                         Demonstration Program

13          As discussed above, *Suzuki* is silent as to any resubmission and discloses nothing

14  regarding client-server architecture other than possibly the idea that a database might be remote

15  from program logic.  *See* Gafford Decl. at ¶¶ 41.  All one would have taken from *Suzuki* is that a

16  remote database could be coupled with the search paradigm of *Suzuki*, which is similar to but less

17  rich than the search paradigm of the AMP Navigator demonstration program (essentially, Suzuki

18  has only one type of item (files) and one category of alternatives (keywords), whereas the AMP

19  Navigator demonstration program deals with any type of item and for each type of item it can

20  have multiple categories of alternatives (e.g., size, color, style, and brand).  Therefore, combining

21  *Suzuki* with the AMP Navigator demonstration program would have been expected to (and

22  would) have resulted in a system with the logical model of the AMP Navigator demonstration

23  program, as described above, coupled with a remote database.  *Id*. at ¶ 43.

24          Because neither the AMP Navigator demonstration program nor *Suzuki* show the

25  "accepting" steps of claim 1 and claim 9 or the operating environment of a web server and client

26  browser, the combination of the two also does not.  *See Id*. at ¶ 44.

27              iii.     Web and HTTP References, including *Arnett*, Do Not Teach
                         The Missing Elements of the Reexamined Claims

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

32

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

As stated above, neither the *Berners-Lee* references, the *Ng* reference, nor the *PC Magazine* reference teach a server "accepting" a "resubmission" as required in step (h) of claim 1 and step (h) claim 9 of the reexamined '821 patent. *See* Gafford Decl. ¶¶ 45-46. Thus, the combination of these references with *Suzuki* and the AMP Navigator demonstration program does not teach a server "accepting" a "resubmission" as required in step (h) of claim 1 and step (h) claim 9 of the reexamined '821 patent. *See* Gafford Decl. ¶¶ 46.

If one were to combine these references with *Arnett* (assuming *Arnett* is prior art), then following *Arnett*'s teaching to not modify the server, "one would simply create a browser that had all of the functionality of AMP Navigator demonstration program in combination with *Suzuki*." *Id.* at ¶ 54.

Thus, the combination of *Arnett*, the AMP Navigator demonstration program, *Suzuki*, and a stateless HTTP server "fails to teach and disclose every element of claim 1 and 9 because the "accepting" steps of claim 1 and claim 9 of the reexamined patent are not taught by the combination." Id. at ¶ 55.

iv. **"Revising" Means That The Server Sends The First Selection Criteria To The Client And Is Also Not Taught By Any References or Combination Thereof**

Based on the arguments made in reexamination, the Court should conclude that steps (g) of claims 1 and 9 ("revising said feature screen" and "revising said data for said feature screen," respectively) mean that the server sends the first selection criteria to the client, as the plain meaning of the claims as further explained in the reexamination file history requires. Reexam File History, Ex. 5 at pp. 10-11 (KS709-710). This is not taught in any of the references cited by the Defendants or in any combination thereof. Gafford Decl., ¶

d. **The Parties Dispute Whether One Of Ordinary Skill Would Have Had A Reason To Combine The AMP Navigator Demonstration Program With Defendants' Other References**

"[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR*, 550 U.S. at 418. Defendants must also show that a person of ordinary skill in the art at the time of invention had reason to combine the elements to achieve the claimed invention. *Id.* at 418-19. They must

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

33

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1   further show that "such a person would have had a reasonable expectation of success in doing

2   so." *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007).

3          These three conclusions (that each of the elements of the claims was in the prior art, that a

4   person of ordinary skill had reason to combine the elements as claimed, and that such a person

5   would have had a reasonable expectation of success in doing so) must be established using facts

6   supported by clear and convincing evidence.  *See Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963,

7   968 (Fed. Cir. 2006).  Only then is a prima facie case of obviousness established.  *See Asahi*

8   *Glass Co,. Ltd. v. Guardian Indus. Corp.*, Civ. No. 09-515-SLR, 30 (D. Del. Sept. 26, 2011).

9          Predictability as discussed in *KSR* encompasses the expectation that prior art elements are

10  capable of being combined, as well as the expectation that the combination would have worked

11  for its intended purpose. An inference that a claimed combination would not have been obvious is

12  especially strong where the prior art's teachings undermine the very reason being proffered as to

13  why a person of ordinary skill would have combined the known elements.  *DePuy Spine, Inc. v.*

14  *Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314 (Fed. Cir. 2009).

15         Mr. Kimbrough testified that in the 1993-94 time frame: " HTML was very primitive, so,

16  you know, the CD-ROM version was very -- for those days was very attractive in terms of colors

17  and 3-D buttons and pictorial indexes and nice radio buttons and drop-down list boxes.  That the

18  internet version didn't have those capabilities when we first started.  It was a hyperlink or nothing

19  pretty much.  So it went from attractive to very ugly."  Ex. 14, 103:11-18.  According to Mr.

20  Kimbrough's testimony, the limitations of HTML precluded reproducing the user interface of the

21  AMP Navigator demonstration program in web versions, undermining the very reasons being

22  proffered as to why a person of ordinary skill would have combined the AMP Navigator

23  demonstration software.  *DePuy*, 567 F.3d at 1314.

24         Even if it is assumed that one of ordinary skill in the art would have been aware of *Arnett*,

25  *Suzuki*, and the other cited references, such a person would not have taken any relevant teachings

26  from them, because other than the idea of remoting the database or a series of conflicting

27  suggestions on how to handle database queries and state management in a web application, the

28  references had nothing relevant to teach someone attempting to enable the AMP Navigator

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

34          KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1   demonstration program for the Internet.

2          For example, "[b]ecause *Suzuki* teaches nothing that is not already implemented in the

3   AMP Navigator demonstration program other than, possibly, a remote database, there is no

4   reason that a person ordinary skill in the art would have had a reason to combine *Suzuki* and the

5   AMP Navigator demonstration program. … One would have taken from *Suzuki* that a remote

6   database could be coupled with the search paradigm of *Suzuki*, which is similar to but less rich

7   than the search paradigm of the AMP Navigator demonstration program." Gafford Decl. at ¶ 43.

8          Similarly with *Arnett* and stateless HTTP servers: "Defendants have not provided any

9   explanation as to why a person of ordinary skill in the art would have had a reason to modify the

10  AMP Navigator demonstration program or *Suzuki* to use a stateless HTTP server as described in

11  the *Berners-Lee* references *in a way that would result in the claimed inventions of claims 1 and 9*

12  *of the reexamined '821 patent.  Only with hindsight* would such a combination have been

13  attempted." *Id*. at ¶ 48 (emphasis added).  However, "It is wrong to use the patent in suit as a

14  guide through the maze of prior art references, combining the right references in the right way so

15  as to achieve the result of the claims in suit. Monday morning quarterbacking is quite improper

16  when resolving the question of nonobviousness in a court of law."  *Orthopedic Equip. Co. v.*

17  *United States*, 702 F.2d 1005, 1012 (Fed. Cir. 1983). *See also Monarch Knitting Machinery Corp.*

18  *v. Sulzer Morat GMBH,* 139 F.3d 877, 881-82 (Fed. Cir. 1998)

19         Because the AMP Navigator demonstration program is so clearly and inherently directed

20  to not resubmitting and not accepting a second selection criteria as claimed, it would require a

21  strong motivation indeed to rearchitect this logic. *See* Gafford Decl., ¶ 51.  Defendants have not

22  identified any sufficiently powerful motivation.[4]  The AMP Navigator demonstration program, in

23  fact, expressly teaches away from resubmission and *Suzuki* does not alter that fact.

24                         e.       The Parties Dispute Whether A Person of Ordinary Skill in the Art

25  ─────────────────────────

26  [4] Defendants argue that "adapting existing systems to include Internet/web functionality is
    obvious." Motion p. 24.  However, there is no such per se law. The records in Defendants' cited

27  cases differ greatly from the record here.  For example, the Federal Circuit cases concern patents
    with priority dates later than that of the '821 patent (after a massive increase in the popularity of

28  the Internet). All have far more extensive factual showings by those seeking to invalidate the
    patents at issue.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

35        KELORA'S OPPOSITION TO DEFENDANTS'
          CLAIM CONSTRUCTION BRIEF AND MOTION
          FOR SUMMARY JUDGMENT

<u>Would Have Had A Reasonable Expectation of Success Developing
the Claimed Invention By Combining The AMP Navigator
Demonstration Program With Defendants' Other References</u>

As has already been mentioned, it is incontrovertible that the AMP Navigator

demonstration program, Defendants' primary reference, did not, and could not, perform

"accepting a second selection criteria" comprising "a resubmission" as claimed.

Combining Suzuki with the AMP Navigator demonstration program would have been

expected to (and would) have resulted in a system with the logical model of the AMP Navigator

demonstration program, as described above, coupled with a remote database.  Gafford Decl. at ¶

45.

The simplest way to convert the AMP Navigator demonstration program to client-server

in 1994 would have been to replace the procedure call to obtain records from the local database at

page 9, lines 42-43 of Exhibit A with a "remote" procedure call that allows the database storage

and the program that searches it to reside on another computer connected via a network to the

computer running the demonstration program.  Such an implementation, while simple, would not

make any use of web architecture, and would not resubmit any alternatives to the server.  Gafford

Decl. at ¶ 49.

Even if one were motivated to convert the demo program into a system based on the

HTTP protocol HTML, so that the demo used web clients and servers that were standardized,

there was no agreed upon method for performing such a conversion.  *Id*. at ¶ 50.  Because of

limitations inherent in the available technology, "redesigning a standalone program to fully take

account of the benefits of a client-server or internet architecture required significant

reconceptualization, not mere reconfiguration.  Basically the problem must be re-solved and re-

implemented in a new paradigm.  There is nothing inherent in the new paradigm, HTTP/HTML,

nor in any of the art cited by Defendants, that would lead one of ordinary skill in the art to arrive

at the solution taught in the '821 disclosure, starting from the AMP Navigator demonstration

program." *Id*. at ¶ 51.  Merely because some applications had been rearchitected around this

time, does not mean that it was obvious to rearchitect the AMP Navigator demonstration program

as claimed.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

36

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

For example, *Arnett* itself teaches to not modify the server, so one combining *Arnett* with the previous combination one would simply create a browser that had all of the functionality of the AMP Navigator demonstration program, resulting in a rich client, perhaps, but not in a system capable of performing the claims of the reexamined '821 patent. *Id*. at ¶ 53.

On page 21 of their Motion, Defendants include a statement from an Office Action in the prosecution of a *different* patent regarding the obviousness of *different* claims. That an examiner thought it might be obvious to provide *those* claims in a client-server environment says nothing relevant about whether moving the AMP Navigator demonstration program to a client-server environment would result in the *current* claims.

4.      A Prima Facie Case of Obviousness of Claims 1 and 9 Has Not Been Made

As made clear above, combining the cited references would not have resulted in all elements of reexamined claims 1 and 9. Moreover importantly at this time, Defendants have certainly not shown, based on clear and convincing evidence, that it would. They have focused only on identifying references for the textually different elements of the claims, making no showing whatsoever that the textually identical but semantically different terms and elements of the reexamined claims are taught by any reference. Indeed, they have relied heavily on the AMP Navigator demonstration program, which is not prior art and which fails to teach elements of the reexamined claims for which Defendants have identified no additional references. Moreover, they have failed to show how the textually different term which is nearly the sole focus of their attention, that concerning resubmission, is taught by the cited references. The most specific and on point reference they introduce shows only that a client could store parameters reflecting its current state and resend them to the server with subsequent requests. Defendants have completely failed to establish in a clear and convincing manner that all of the elements of the reexamined claims are part of the prior art. They have failed to show that such references as they do identify would be combined by one of skill in the art. And Defendants have failed to show that were one of skill to combine them, the combination would be reasonably likely to result in the claimed invention.

5.      Secondary Considerations Weigh Against A Finding Of Obviousness

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    "Such secondary considerations as commercial success, long felt but unsolved needs,

2    failure of others, etc., might be utilized to give light to the circumstances surrounding the origin

3    of the subject matter sought to be patented."  *KSR*, 550 U.S. 398, quoting *Graham,* 383 U.S. at

4    17-18.

5          The commercial success of the claimed invention is beyond dispute.  Defendants all

6    perform it, and although some protest that they are not afoul of patent law, none suggest that the

7    specific concepts claimed are not being deployed on their behalf and for their benefit.  Indeed, a

8    number of Defendants provide this functionality to others.  Danish Decl., ¶8  There are a number

9    of non-infringing ways to achieve a similar business result, yet thousands of retailers perform the

10   claimed method and few eschew it in favor of the non-infringing alternatives.  *Id.* at ¶ 9.

11         After becoming aware of the success of Saqqara, the then owner of the '821 patent, both

12   Microsoft, which all the development power at its disposal, and Verity, which had hired Mr.

13   Arnett several years before and still had him in their employ, engaged in discussions with

14   Saqqara.  Verity ultimately offered to purchase Saqqara.  Danish Decl., ¶ 5.  Microsoft engaged

15   Saqqara as a partner and, only after reviewing Saqqara's code did it deploy remarkably similar

16   functionality in its own products in 2000.  *Id.* at ¶ 6-7.  Guided parametric search products by

17   competitors were not available until long after the priority date of the '821 patent.  *Id.* at ¶¶ 10,

18   11.  The failure of these entities to independently develop this functionality, well after they

19   recognized the need for it and saw the success of Saqqara and its competitors, also speaks to the

20   non-obviousness of the claimed invention.  *See Advanced Display Sys. v. Kent State Univ.*, 212

21   F.3d 1272, 1285 (Fed. Cir. 2000) ("evidence of failed attempts by others could be determinative

22   on the issue of obviousness … an accused infringer's inability to develop a product made possible

23   by the claimed invention indicated nonobviousness … competitors' failure to develop the

24   patented invention suggested nonobviousness … failure by others, including the accused

25   infringer, to develop the claimed invention constitutes virtually irrefutable evidence of

26   nonobviousness" (cites omitted)).

27         6.    Defendants Have Not Shown That Dependent Claims 2-4 Are Obvious

28   For at least the reasons mentioned above, Defendants have also failed to show that claims

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

38

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

2, 3, and 4, which depend from independent claim 1, are obvious.  A claim that depends from a nonobvious independent claim is nonobvious because it contains all of the limitations of that independent claim plus a further limitation.  *In re Fine*, 837 F.2d 1071 (Fed. Cir. 1988).

### D.   The Reexamined Claims Are Not Invalid Under 35 U.S.C. § 305 Because No Amendments During Reexamination Enlarged The Scope of the Claims

The Defendants' arguments regarding alleged invalidity under Section 305 rely on incorrect construction of the original claims, contriving requirements of action by a client that appeared nowhere in the plain language of the original claims.  The Defendants' arguments that the amendments made in reexamination were made to avoid the "divided infringement" arguments made by eBay and Microsoft in the prior PartsRiver case are incorrect and not relevant to the analysis.  The alleged "divided infringement" issue was never ruled on by this Court in the prior PartsRiver litigation, and this Court previously denied, albeit without prejudice, the motion for summary judgment of invalidity under Section 305 filed in the current litigation in Case No. 10-4947.  Ex. 40, Docket No. 70 in Case No. 10-4947.

As explained above, the amendments made in reexamination were made to distinguish the claims from the prior art cited by the reexamination Examiner.  The original claims included no limitations regarding a client or a server and thus did not specify whether steps were to be performed by either a client or a server.  The reexamined claims, in contrast, are expressly limited to methods "performed with a server."

In reexamination, the Examiner indicated that he would allow claim 1 if amended to included the distinguishing features added to Claim 9.  *See supra*, p. 14.  A patent is presumed valid, and the Examiner is "presumed to do [his] job."  Further, during reexamination proceedings, Examiners are required to "examine[] claims under 35 U.S.C. § 305[] to determine whether they enlarge the scope of the original claims."  Manual of Patent Examining Procedure (MPEP) § 2258(III)(A).   Accordingly, the amendments to claim 1, and the additional limitations of claim 9, are presumed to have been issued in compliance with 35 U.S.C. § 305, as these modifications to the original '821 patent were explicitly sanctioned by the Examiner in reexamination.

1        1.        Applicable Law Regarding Invalidity Under 35 U.S.C. § 305

2        Under 35 U.S.C. § 305, "[n]o proposed amended or new claim enlarging the scope of a

3    claim of the patent will be permitted in a reexamination proceeding." *Predicate Logic, Inc. v.*

4    *Distributive Software, Inc.*, 544 F.3d 1298, 1302 (Fed. Cir. 2008); see also *Quantum Corp. v.*

5    *Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995). "Whether amendments made during

6    reexamination enlarge the scope of a claim is a matter of claim construction." *Id.*, citing *Creo*

7    *Prods., Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1344 (Fed. Cir. 2002).

8        In new Claim 9, "revising *said data* for said feature screen ..." does not cover anything

9    that was not covered by "revising said feature screen."  With respect to the "revising" step of new

10   claim 9, Defendants state that "for purposes of invalidity under § 305, the only claim

11   construction question is whether "revising said feature screen" in original claim 1 had to be

12   performed by the **user's computer**."  Motion at 37, *see also* Motion at 36 (footnote 21) (stating

13   that the "key issue" in this dispute is "who performs this step").  Motion at 37.  There is no such

14   distinction in the claim or elsewhere.

15       **Claim Language:**  The Defendants' definition of the "revising" step of original claim 1,

16   requiring action by the user's computer, is clearly contrary to the language of the claims

17   themselves.  *Phillips*, 415 F.3d at 1312; *Vitronics*, 90 F.3d at 1582.  Generally, the Court ascribes

18   the words of a claim their ordinary and customary meaning, and other claims of the patent can

19   also assist in determining the meaning of a claim term  *Phillips*, 415 F.3d at 1312-1314.

20       Original claim 1 provided in steps (g) and (k) the function "revising said feature screen."

21   *See* Ex. 2, original claim 1.  This phrase in original claim 1 is not limited to any particular aspect

22   of the function of revising the feature screen.  The same is true of the "revising" step in

23   reexamined claim 1, although the preamble of reexamined claim 1 limits the method to one

24   "performed with a server."   Therefore, the claim language of the original and reexamined

25   versions of claim 1 provides no support for the Defendants' unduly limiting proposal to limit the

26   "revising" step in original claim 1 so that it must be performed with the user's computer.

27       Defendants try to have it both ways with respect to the "revising" step in reexamined

28   claims 1 and 9.  On one hand, the Defendants argue in service of their "divided infringement"

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

40

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1  theories that the "revising" step of reexamined claim 1 must be preformed by the user's computer.

2  Motion at 49. They make this argument notwithstanding that the preamble of reexamined claim

3  1, like the preamble of reexamined claim 9, expressly states that the method is "performed with a

4  server." On the other hand, the Defendants argue in service of their theories of invalidity of

5  reexamined claim 9 under Section 305 that the "revising" step of reexamined claim 9 is

6  "performed with a server," consistent with the claim's preamble. *See* Motion at 37. The

7  Defendants' inconsistent constructions of the identical "performed with a server" language in the

8  preambles of reexamined claims 1 and 9 highlights the fact that the Defendants' claim

9  constructions are driven by litigation defenses, not the legally correct meaning of the claims.

10  **Specification:** The specification directly contradicts the Defendants' proposed limitation

11  of the "revising" step in original claim 1 to be an action performed by the user's computer.

12  "Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed

13  term." *Phillips*, 415 F.3d at 1315; *Vitronics*, 90 F.3d at 1582. Further, claim terms are generally

14  not interpreted in a way that excludes embodiments disclosed in the specification. *Oatey Co. v.*

15  *IPS , Corp.,* 514 F.3d 1271, 1276-1277 (Fed. Cir. 2008); *Verizon Services Corp. v. Vonage*

16  *Holdings Corp*, 503 F.3d 1295, 1305 (Fed. Cir. 2007); *Invitrogen, Corp. v. Biocrest*

17  *Manufacturing, L.P.*, 327 F.3d 1374, 1369 (Fed. Cir. 2005); *Vitronics*, 90 F.3d at 1583 (a claim

18  interpretation that excludes a preferred embodiment is "rarely, if ever, correct").

19  The specification of the '821 patent expressly describes the function of "revising" the

20  feature screen with reference to program logic as well as illustrative examples of revised feature

21  screens resulting from the performance of the methods. Ex. 2, FIG. 24 and col. 5, lines 1-2

22  ("FIG. 24 is a graphical representation of the program flow of an embodiment of the feature

23  screen revision operation"). The specification describes a "feature screen revision operation" that

24  is performed "by the system." Ex. 2, 17:41-18:10. The specification further expressly states that

25  in Internet embodiments, this logic "reside[s] on the server." Ex. 2, 18:13-14.

26  To construe original claim 1 to exclude the server-side logic described in the specification,

27  as illustrated above, would erroneously exclude a described embodiment. *Oatey*, 514 F.3d at

28  1276-1277; *Verizon*, 503 F.3d at 1305; *Invitrogen*, 327 F.3d at 1369; *Vitronics*, 90 F.3d at 1583.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

41

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    Accordingly, "revising said feature screen" in original claim 1 is properly construed in light of the

2    specification to encompass any aspect of the described feature screen revision functionality,

3    which includes methods performed with a server and revision of data for the feature screen.

4        **Prosecution History**:  Defendants rely on vague, unilateral statements made by the

5    Examiner during the *reexamination* to support their construction that "revising" is an action

6    performed on the screen of the user's computer in *original* claim 1.  Motion at 38.  While the

7    reexamination Examiner's may reflect his understanding of the claim language during the

8    reexamination in 2009, 15 years after the time of the invention, such statements do not form part

9    of the prosecution history of the original claims and therefore cannot be relied upon to limit the

10   meaning of the original claim 1.  Moreover, the Federal Circuit has held that "examiner's

11   unilateral remarks alone do not affect the scope of the claim." *Salazar v. Procter & Gamble Co.*,

12   414 F.3d 1342, 1347 (Fed. Cir. 2005)  "[A]n applicant's silence regarding such statements does

13   not preclude the applicant from taking a position contrary to the examiner's statements when the

14   claim terms are construed during litigation." *Id.*

15       Defendants do not cite to any portion of the original prosecution history that demonstrates

16   any express disclaimer of claim scope or otherwise affirmatively supports their construction.

17   Accordingly, there is no legitimate basis in the prosecution history for the Defendants' proposed

18   construction of original claim 1.

19       **Inventor testimony:**  The Defendants also cite the equivocal deposition testimony of

20   inventor Mr. Danish, given in 2009 – some 15 years after the relevant time, in support of their

21   proposal to limit the "revising" step in original claim 1 to require action on the user's computer.

22   Motion at 38-39.  Because the intrinsic evidence discussed above clearly demonstrates the proper

23   construction of the claim language at issue, there is no need to resort to extrinsic evidence such as

24   inventor testimony, which is "less significant than the intrinsic record in determining 'the legally

25   operative meaning of claim language.'" *Phillips*, 415 F.3d at 131, citing *C.R. Bard, Inc. v. U.S.*

26   *Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004); *Vanderlande Indus. Nederland BV v. Int'l*

27   *Trade Comm'n*, 366 F.3d 1311, 1318 (Fed. Cir. 2004); *Astrazeneca AB v. Mutual Pharm. Co.*,

28   384 F.3d 1333, 1337 (Fed. Cir. 2004).  Moreover, the cited deposition testimony, is, in fact,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

42

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    consistent with Kelora's position based on the intrinsic evidence: that the "revising" step in

2    original claim 1 was not limited to action on the user's computer because the specification

3    expressly describes program logic for feature screen revision operations that "resides on the

4    server" in Internet embodiments.  Ex. 2, 17:41-18:14.

5           As demonstrated above, the Court should reject the Defendants' proposal to re-write the

6    "revising" step of original claim 1 to require action on the user's computer when there is no such

7    requirement in the plain language of the claim.  Accordingly, the Defendants' have not met their

8    burden to show by clear and convincing evidence that reexamined claim 9 is invalid under

9    Section 305 because it covers a method that was not covered by the original claims.  *Predicate*

10   *Logic*, 544 F.3d at 1303, *Quantum*, 65 F.3d at 1582 n.4; *Medtronic,* 465 F.3d at 1374.

11          In reexamined claims 1-4 and 9, "accepting a second selection criteria" does not cover

12   anything that was not covered by the original claims.  The Court previously ruled on this issue,

13   stating: "The Court is not convinced that the language of the original claims supports the

14   limitation advocated by [Defendants]. [Defendants] have not identified anything in the original

15   claims indicating that the user necessarily performed the 'accepting' task as defined in step (h)."

16   Ex. 40, Docket No. 70 in Case No. 10-4947.  The Defendants' renewed arguments on this issue

17   should be rejected anew.

18          The Defendants argue, similar to their arguments regarding the "revising" step of

19   reexamined claim 9 discussed above, that "for purposes of invalidity under §  305, the only claim

20   construction question is whether step (h) in the ***original*** claims must be performed by the ***user*** on

21   a client computer."  Motion at 41.  The parties agree that, in the reexamined claims, step (h) is

22   performed by the server.  Motion at 40.

23          **Claim Language**: The Defendants' construction of the term "accepting" is clearly

24   contrary to law the language of the claims themselves.  *Phillips*, 415 F.3d at 1312; *Vitronics*, 90

25   F.3d at 1582.  The Court should give the claim language its ordinary and customary meaning,

26   consistent with the surrounding claim language.  *Phillips*, 415 F.3d at 1312-1314.  Nothing in the

27   claim language of the original or reexamined claims supports the Defendants' proposal that the

28   "accepting" step in original claim 1 was limited to action by the user.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

43                    KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    The original claim language did not specify where the accepting was to take place and

2    thus encompassed "accepting" in local embodiments as well as "accepting" by a server in Internet

3    embodiments.  In contrast, the preambles of reexamined claims 1-4 and 9 do specify that the

4    "accepting" and all other steps are "performed with a server."

5    In both the original claims and the reexamined claims, the user's chosen alternatives are

6    processed to generate the "selection criteria."  This has been explained in the declaration of

7    inventor Mr. Danish in support of Kelora's Opposition to the motion for summary judgment by

8    eBay and Microsoft in Case No. 10-4947.  *See* Danish Decl. (Docket No. 58 in Case No. 10-

9    4947) at ¶¶ 13-14.  After the "selection criteria" are generated based on the user's chosen

10   alternative features, the system or the server then accepts the "selection criteria" for processing at

11   the "accepting" step.  *Id*.  Accordingly, a user's decision to choose alternative features occurs

12   before the "selection criteria" are generated for "accepting" by the system or the server, and

13   cannot possibly be construed as the accepting step.

14   **Specification**: An important failing in Defendants' argument is the incorrect assumption

15   that "accepting" corresponds to user choices and decisions.  The Defendants cite selective

16   portions of the specification deemed supportive of their proposed construction while ignoring

17   other portions of the specification, discussed further below, which describe other embodiments.

18   Motion at 41-42.  Regardless of the Defendants' selective citations, the claims are not limited to

19   the preferred embodiments described in the specification. *SRI Int'l*, 775 F.2d at 1121; *TIP Sys.,*

20   *LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008).

21   The original and reexamined claims specifically recite accepting a first/second "selection

22   criteria," but the claims do not specify directly accepting the user's chosen alternatives.  As

23   previously discussed, the user's chosen alternatives are processed to generate "selection criteria"

24   for accepting by a system or a server.  Accordingly, "selection criteria" should be properly

25   construed to mean "a signal including one or more alternatives to be used in search operations,"

26   and not the user's chosen alternatives themselves.

27   This is illustrated by the following description in the specification of what constitutes

28   "selection criteria," which is repeated at page 42 of the Motion:

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

44

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1

> In response to a user initiated signal to perform a search, the system retrieves information concerning which user selectors 16, 23 are turned "on" and to which alternatives 6 the user selectors 16, 23 that are turned "on" relate. The alternatives 6 turned "on" are the selected alternatives 37 and constitute the selection criteria 14 used in the search to generate a subfamily 2.

2

3

4   Ex. 2, 7:40-49.

5        As can be seen in the above passage, the system "retrieves information concerning" which

6   selectors are turned "on" as a function that is separately described from the user's act of turning

7   "on" the selectors by clicking radio buttons.  The selected alternatives 37 constitute the "selection

8   criteria" that are in turn used in the search to generate a subfamily.  The Defendants' proposed

9   construction of the "accepting" step improperly seeks to conflate the user's act of turning "on"

10  selectors with the separate functions performed by the system of generating selection criteria

11  based on the user's selections and then "accepting" or "retrieving information concerning" those

12  selection criteria.

13       Further, in the context of the Internet embodiments, the specification describes the

14  function of "accepting" a "second selection criteria" as an act performed by the server, as follows:

15
> The user on the client, makes selections from among the available alternatives 7 generating a selection criteria 14 different from that which was set to it. . . . The client 126 sends to the server 125, the ScreenNum 102 value sent to it by the server, and the modified selection criteria 14.  The server 125 receives the ScreenNum 102 and the selection criteria 14.

16

17

18  Ex. 2, 18:64-19:4.  This clearly describes that the user's act of making selections generates a

19  selection criteria, but the generation of selection criteria is not claimed and is separate from the

20  function performed by the server of "receiv[ing]" or "accepting" the selection criteria generated

21  from the user's selections.

22       **Prosecution History**:  Defendants again rely on a unilateral statement made by the

23  examiner during the prosecution of the original claims to support their construction that

24  "accepting" is an action performed by the user.  Motion at 43.  However, as noted above, an

25  "examiner's unilateral remarks alone do not affect the scope of the claim ... and an applicant's

26  silence regarding such statements does not preclude the applicant from taking a position contrary

27  to the examiner's statement."  *Salazar*, 414 F.3d at 1347.

28       The Defendants make much of the Examiner's reliance on the Lewak patent as support for

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

45

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    the proposition that the Examiner interpreted the "accepting" step as referring to the user's action.

2    *See* Motion at 43.  However, the claims of the Lewak patent show the converse.  For example, the

3    Lewak patent claims methods including the step of "accepting user input" (*see* claims 1, 4-5, 7,

4    10, 13, and 20-21) and systems with "means for . . . accepting user input" (*see* claim 18).  Ex. 10,

5    Lewak at Cols.16-20.  Thus, not only do the Examiner's unilateral statements regarding the

6    Lewak patent fail to determine the scope of the claims, *Salazar*, 414 F.3d at 1347, but the cited

7    Lewak patent contradicts the Defendants' assertion that "accepting" means action by the user.

8        **Inventor testimony**:  Moreover, as explained by inventor Mr. Danish with reference to

9    the specification, the term "accepting" in the '821 patent refers to acceptance of a selection

10   criteria by the system so that a search can be performed.  *See* Ex. 2, 18:64-19:6, discussed in

11   Danish Decl. (Docket No. 58 in Case No. 10-4947) at ¶13.  Mr. Danish further made clear that

12   the term "accepting" in the '821 patent does not refer to selecting actions by the user.   *See* Ex. 2

13   8:6-9; 18:66-19:11; FIG. 25, discussed in Danish Decl. (Docket No. 58 in Case No. 10-4947) at

14   ¶¶ 14-15.

15       Accordingly, Defendants' have not met their burden to show by clear and convincing

16   evidence that reexamined claims 1-4 and 9 are invalid under Section 305.  *Predicate Logic*, 544

17   F.3d at 1303, *Medtronic,* 465 F.3d at 1374.

18       **E.     There Is No Divided Infringement Issue Because The Reexamined Claims At
             Issue Are Expressly Limited To Actions "Performed With A Server" And
19           Require No Action By Any Other Entity**

20       The Defendants' divided infringement arguments in Section V.C. (pages 45-51) all rely on

21   their claim construction arguments that "displaying," "revising," and "accepting a second

22   selection criteria [comprising] a resubmission" must be performed by the "client" computer, and

23   cannot be performed by a "server" computer or anything else.  Because these arguments are

24   incorrect as a matter of law, these arguments fail.

25       Moreover, regardless of the claim construction, the motion must fail for another reason.

26   No evidence was submitted to show that the Defendants do not perform the steps, or if the steps

27   are only performed by others, that they do not control or direct the performance of the steps.

28   Indeed, the Motion makes no argument that these claim elements are not performed, only that

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

46        KELORA'S OPPOSITION TO DEFENDANTS'
              CLAIM CONSTRUCTION BRIEF AND MOTION
              FOR SUMMARY JUDGMENT

1  they are performed by the "client" computer.[5]  Kelora's expert, Mr. Gafford, has reviewed

2  Kelora's infringement contentions and has opined that the exemplary evidence cited therein

3  shows that each Defendant's servers perform each and every element of the reexamined claims

4  charted in the infringement contentions.  Gafford Decl., ¶ 66.  Accordingly, the Motion must fail

5  because the Defendants have not met their burden of showing that they are entitled to judgment as

6  a matter of law.

7                    1.    Applicable Legal Standards

8          The resolution of the Defendants' divided infringement arguments depends on claim

9  construction.  *See SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1329 (Fed. Cir. 2010); *Cybor Corp. v.*

10  *FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).  The Federal Circuit recently

11  confirmed in *Uniloc v. Microsoft* the principle noted in *BMC* that, "[a] patentee can usually

12  structure a claim to capture infringement by a single party," by "focus[ing] on one entity."

13  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1309 (Fed. Cir. 2011), citing *BMC*

14  *Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007).  Reexamined claims 1

15  and 9 focus exclusively on steps "performed with a server," and as such require no steps by any

16  other entity.

17          The Federal Circuit made clear in *Uniloc*, "That other parties are necessary to complete

18  the environment in which the claimed element functions does not necessarily divide the

19  infringement between the necessary parties."  *Id*.  As an example of this, the Federal Circuit noted

20  that a claim that reads "An algorithm incorporating means for receiving e-mails" may require two

21  parties to function, but could nevertheless be infringed by the single party who uses an algorithm

22  that receives e-mails.  *Id*.

23          The claims here are distinguishable from those at issue in *Muniauction* and *BMC*.  In

24  *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008), the method at issue

25  required actions to be taken by both a "bidder" and an "issuer."  *See Muniauction*, 532 F.3d at

26  _____

27  [5] Nevertheless, as exemplified in Kelora's infringement contentions, each Defendant makes
    and/or uses servers that perform each and every step of the methods of the reexamined claims
    of the '821 patent, including without limitation the "displaying," "revising," and "accepting a second

28  selection criteria [comprising] a resubmission" elements. Kleinman Decl., Exs. A-M.

1   1322.  In *BMC*, the parties "agree[d] [that] Paymentech [the Defendant] does not perform every

2   step of the method at issue in this case."  *BMC*, 498 F.3d at 1378.  Moreover, as acknowledged in

3   the Defendants' Motion in footnote 28 on page 45, the law regarding divided infringement is in

4   flux pending the Federal Circuit's en banc review of two cases concerning divided infringement,

5   in which oral argument is scheduled for November 18, 2011.  *See Akamai Techs., Inc. v.*

6   *Limelight Networks, Inc.*, 2011 U.S. App. LEXIS 19425 (Fed. Cir. Sept. 20, 2011) and *McKesson*

7   *Techs. Inc. v. Epic Systems Corp.*, 2011 U.S. App. LEXIS 19425 (Fed. Cir. Sept. 20, 2011).

8          Here, the parties agree that the preambles of reexamined claims 1 and 9 are limiting.  It is

9   further undisputable that the preambles specify that the methods are "performed with a server."

10  Thus, only one party, each Defendant, makes and/or uses the server that performs each step that

11  claims 1 and 9.  *See Id.; Muniauction*, 532 F.3d at 1329; *BMC*, 498 F.3d at 1373.

12         The Defendants' divided infringement arguments are analogous to arguments rejected

13  recently by the Federal Circuit in *SiRF*.  *See SiRF*, 601 F.3d at 1329-1331.  *SiRF* involved patents

14  in the field of GPS technology, a navigation system comprising satellites orbiting Earth that

15  permits a GPS-enabled receiver to detect signals from satellites and use that information to

16  compute its position on Earth.  *SiRF*, 601 F.3d at 1322-1323.

17         The claims at issue in *SiRF* were directed to methods performed in environments that

18  included government-operated GPS satellites, end user-operated GPS receivers, and third party-

19  operated A-GPS receiving stations.  *Id*.  SiRF argued that the claims are only infringed when

20  actions are taken by SiRF's customers, which incorporate SiRF chips into end-user GPS devices

21  and maintain intermediate servers, and by the end users of the GPS devices; that SiRF

22  accordingly can infringe the patents only when it is a joint infringer together with the customers

23  and the end users; and that the requirements for joint infringement are not satisfied because SiRF

24  does not control or direct the customers or end users.  *Id*., citing *Muniauction, Inc. v. Thomson*

25  *Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008).

26         The Federal Circuit in *SiRF* did not reach the question of joint infringement because it did

27  not read the relevant claims as requiring that any of the specified actions be taken by SiRF's

28  customers or by the end users of the GPS devices.  The Federal Circuit explained:

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

48                    KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1

2

3

4

5

> This is not a situation where a method claim specifies performance of a step by a third party, or in which a third party actually performs some of the designated steps, and thus control or direction of the performance of that step by the Defendant is required. Rather, the method claims at issue here are drawn to actions which can be performed and are performed by a single party. As they do not require that any of the steps be performed here by the customers or the end users, and the disputed steps are not in fact performed by third parties, we conclude that SiRF directly infringes.

*SiRF*, 601 F.3d at 1329.

6

7

8

9

10

11

12

Acknowledging that the claim steps can only occur if certain third-party actions occur, the Court determined that the third-party actions are not required by the claims, and, therefore, the fact that other parties perform these actions does not preclude a finding of direct infringement. *SiRF*, 601 F.3d at 1329-1330.  The Federal Circuit concluded that there was no divided infringement because there was no method step in any of the disputed claims that requires the third-party actions, and it was improper to read limitations regarding these actions into the claims. *Id*., citing *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340-41 (Fed. Cir. 1999).

13

14

15

16

17

18

19

The Defendants' divided infringement arguments are analogous to the arguments rejected by the Federal Circuit in *SiRF* . Defendants seek to read into the claims extraneous actions by end users that are not, in fact, found in the plain language of the claims.  *Id*.  Notwithstanding that the claimed methods are performed in an environment including a client and a network, no actions other than those "performed with a server" are required in the claims.  It would be erroneous to import limitations requiring actions by other entities into the claims.  *Id*.

20

### 2.   Claims 1–4 and 9: "displaying"

21

22

23

24

25

26

27

28

As noted above, the parties' claim construction dispute regarding the "displaying" step concerns whether the step is performed by a server or by a client.  In fact, the proposed construction offered by the Defendants, "showing on the display device of the user's computer [a feature screen/at least one grouping]," is sufficiently broad to encompass action by the server or by the client and thus does not dispose of the alleged divided infringement issue.  In Internet embodiments, the web server is effectively in control of the browser, which only does what the server instructs.  The parties' dispute regarding the "displaying" step in claims 1-4 is essentially identical to the dispute regarding the "revising" step discussed above in rebuttal to Defendants'

49

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1   arguments regarding alleged invalidity of reexamined claim 9 under Section 305.  Motion at 49

2   (equating the dispute regarding the "revising" term with the dispute regarding the "displaying"

3   term).  For the same reasons, "displaying" is not limited to an action performed by the user.

4       **Claim language:**  It is well established that the claims themselves provide substantial

5   guidance as to the meaning of particular claim terms. *Phillips*, 415 F. 3d at 1314; *Vitronics*, 90

6   F.3d at 1582; *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the

7   context of the surrounding words of the claim also must be considered in determining the

8   ordinary and customary meaning of those terms").  The plain language of the preambles of claims

9   1 and 9 specifies that the claimed methods are "performed with a server."  The Defendants in

10  effect ask the Court to disregard the limitations in the preambles of claims 1 and 9 in order to read

11  into the claims limitations requiring action by the client, which would be error.  *Phillips*, 415 F.

12  3d at 1314; *Vitronics*, 90 F.3d at 1582; *ACTV*, 346 F.3d at 1088.

13      The fact that the term "displaying" encompasses action performed by the server or by the

14  client is further illustrated by the claims of the grandparent patent to the '821 patent, the '444

15  patent.  The presence of a dependent claim that adds a particular limitation gives rise to a

16  presumption that the limitation in question is not present in the independent claim. *Phillips*, 415

17  F. 3d at 1315, citing *Liebel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898, 910 (Fed. Cir. 2004).

18  Claim 1 of the parent '444 patent includes a step (c) with text identical to step (c) of claim 1 of

19  the reexamined '821 patent, providing: "displaying a feature screen indicating said alternatives

20  represented in the family."  Ex. 6 ('444 patent), 19:53-54.  One of the dependent claims of the

21  '444 patent, claim 14, specifies that certain steps of the method are "executed on a server" and

22  other steps, including the "displaying a feature screen" step, are "executed on a client."  Ex. 6,

23  '444 patent, 20:52-58.  This shows that the patentee knew how to claim actions "executed on a

24  client" but chose not to do so in the reexamined claims of the '821 patent.

25      **Specification:**  Kelora's proposed construction also is consistent with the corresponding

26  descriptions in the specification.  As noted above, the specification describes the act of

27  "displaying" by the server in the Internet embodiments.  Ex. 2, 18:48-54.  The specification

28  further explains that the client then merely reflects what the server sends it. Ex. 2, 18:61-63.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

50

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1      **Prosecution History:**  The Defendants argue that the reexamination prosecution history

2   supports their construction because Kelora proposed and then withdrew language for step (c) of

3   new claim 9 that included the phrase "outputting data for a feature screen."  The Defendants'

4   argument is misguided and fails to support their proposed construction.   In fact, the language of

5   step (c) of claim 9 actually supports Kelora's proposed construction because it limits the step of

6   "displaying" with the further requirement, "wherein data is output to a client computer via said

7   computer network."  Ex. 3, claim 9.

8      While step (c) of claim 1 recites the step of "displaying" without the additional limitation

9   "wherein data is output to a client computer via said computer network," the wherein clause in

10  claim 9 modifies the step of "displaying" in such a way as to make it clear that "displaying"

11  includes the concept, "wherein data is output to a client computer via said computer network."

12     The term "displaying" must be interpreted to include the concept "wherein data is output

13  to a client computer via said computer network" in order to give meaning to the language of step

14  (c) of new claim 9 because, "A claim construction that gives meaning to all the terms of the claim

15  is preferred over one that does not do so," *Merck & Co. v. Teva Pharms. USA, Inc*., 395 F.3d

16  1364, 1372 (Fed. Cir. 2005).

17     **Inventor Testimony**: Moreover, Kelora's proposed construction is consistent with the

18  meaning of the term "displaying" as explained in the deposition testimony of inventor Mr.

19  Danish, as well as the deposition testimony of Mr. Arnett, on whom the Defendants rely for

20  testimony regarding alleged prior art.  For example, Mr. Danish testified as follows in response to

21  the question "So does the server or the user display the feature screen?": "**I would say that if a**

22  **developer is writing the code for the web server regarding reading the database and**

23  **searching it and so forth and displaying results, a comment would certainly say display the**

24  **feature screen**, for example.  So that's why I'm saying it is a function of the server to determine

25  what is this feature screen and send it to the browser, and the browser will interpret it and

26  visualize it for the user."  Kleinman Decl., Ex. P, 271:10-272:20 (emphasis added).

27     Similarly, in response to deposition questions regarding claim 14 of the '444 patent,

28  inventor Mr. Danish testified: "[T]he client alone cannot do anything like the display ... in

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

51

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1  displaying the browser can only display what it receives.  So what it receives -- the essence of the
2  information is actually coming from the server for the display ....”  Kleinman Decl., Ex. O,
3  120:21-121:9.  Mr. Danish further explained in deposition that the action of “displaying,” in the
4  context of the web server in an Internet embodiment, refers to the server sending a page to be
5  displayed by a browser.  Ex. 11, 111:11-112:10.  This demonstrates that the term “displaying”
6  may mean action by the server or action by the client.

7  Confirming Mr. Danish’s understanding of the term “displaying,” Nick Arnett, on whom
8  the Defendants’ rely for testimony regarding alleged prior art, admitted in deposition that
9  “displaying” is understood by those of ordinary skill in the art to include a function performed by
10  web servers.  Kleinman Decl. Ex. N, 95:4-13.

11  In summary, the Defendants’ divided infringement arguments improperly ignore the
12  amendments made in reexamination, which expressly limited the claims to actions “performed
13  with a server.”  They also improperly ignore the “wherein” clause in step (c) of new claim 9,
14  which makes clear that “displaying” may mean that “data is output to a client computer.”  Indeed,
15  the Defendants’ divided infringement arguments ignore the fact that their own proposed
16  construction of the “displaying” step is broad enough to encompass action by the server.

17  The step of “displaying,” which the claims expressly require to be “performed with a
18  server” and, in claim 9, is expressly limited to specify that “data is output to a client computer,”
19  cannot properly be limited to require action by the client as Defendants argue.  Kelora’s proposed
20  construction is the meaning that is more consistent with the language of the claims themselves,
21  the written description in the specification, the prosecution history, and the deposition testimony
22  of persons of skill in the art, Messrs. Danish and Arnett.

23  3.  Claims 1–4: “revising said feature screen to indicate the available
alternatives of the [first/second] subfamily”

24  As discussed above in rebuttal to the Defendants’ arguments concerning alleged invalidity
25  under Section 305 relating to the “revising” step of reexamined claim 9, the “revising” step is
26  clearly described in the specification with reference to a “feature screen revision operation”
27  performed by the server.  Ex. 2, FIG. 24, 17:42-18:14.  With respect to the Defendants’

KELORA’S OPPOSITION TO DEFENDANTS’
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

arguments regarding alleged divided infringement, the parties' dispute regarding the "revising"

step in claims 1-4 is essentially identical to the dispute regarding the "displaying" step discussed

above.  *See* Motion at 49.  That is, the Defendants argue that the "revising" step must be

performed by the user's computer, while Kelora contends that the step is not so limited and,

instead, encompasses "revising" performed by the server.

The analysis of the "revising" step is effectively equivalent to that of the "displaying"

step, as inventor Mr. Danish explained in deposition: "Well, if you look at step G, revising said

feature screen, 'revising' here obviously means displaying, again.  So it is equivalent to the

analysis of step C ...."  Ex. 11, 274:16-19.  For the same reasons discussed above with respect to

the "displaying" step, the "revising" steps are "performed with a server," as the claim preambles

specify, and are not limited to actions performed by the end user's computer.

4.    <u>Claims 1–4, 9: "accepting a second selection criteria ... [that] comprises a
resubmission"</u>

The proper construction of the "accepting a second selection criteria" element is discussed

above in rebuttal to Defendants' arguments of alleged invalidity under Section 305 of reexamined

claims 1-4 and 9.  As with the "displaying" and "revising" steps discussed above, the parties'

dispute concerning the claim language regarding "a resubmission" in step (h) of claim 1 and step

(h) of claim 9, concerns whether the claims require action by the user's computer rather than

action "performed with a server" as the preambles of the claims require.  In fact, the Defendants

concede in their broadening amendment arguments that, "There does not appear to be any dispute

that step (h) in the ***amended*** claims is performed by the ***server***."  Motion at 40.  Kelora agrees that

step (h) of reexamined claims 1 and 9 is performed by the server.

Having conceded that step (h) is performed by the server in the reexamined claims, the

Defendants then argue inconsistently in their divided infringement arguments that step (h) in the

reexamined claims requires action by the user's computer.  These arguments are legally incorrect.

Step (h) of claims 1 and 9 clearly is performed by the server in view of the limitation in

the preambles of both of these claims that the method steps are "performed with a server."  The

language "a resubmission to the server of the alternative or alternatives of the first selection

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

53

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    criteria" in step (h) of claim 1, and "(1) a resubmission by said client computer of the alternative

2    or alternatives of the first selection criteria" in step (h) of claim 9 refers to what is accepted by the

3    server.

4         As noted above, the Federal Circuit explained in *Uniloc*, "That other parties are necessary

5    to complete the environment in which the claimed element functions does not necessarily divide

6    the infringement between the necessary parties." *Uniloc*, 632 F.3d 1309.  The correct analysis

7    here is analogous to the example provided by the Federal Circuit in Uniloc, of a claim that reads,

8    "An algorithm incorporating means for receiving e-mails," which can nevertheless be infringed

9    by the single party who uses an algorithm that receives e-mails even though such a claim may

10   require two parties to function.  *Id.*

11        The "resubmission" language does not create a new step of the methods that must be

12   performed by the user's computer, which would contradict the clear language of the preambles

13   limiting the claimed methods to steps "performed with a server."  Instead, the "resubmission"

14   language refers to what is accepted by the server in the respective steps (h) ("accepting" (claim 1)

15   and "receiving and accepting" (claim 9)).

16        There is no divided infringement here because the claims are infringed by the single party,

17   each Defendant, who uses a server that accepts (claim 1) and/or receives and accepts (claim 9) "a

18   resubmission" meeting the requirements of step (h).  The Defendants' attempt to read limitations

19   regarding actions by the user's computer into the claims is contradictory to the Defendants' own

20   arguments (*see* Motion at 40) as well as Federal Circuit law.  *See SiRF*, 601 F.3d at 1330-1331;

21   *Burke*, 183 F.3d 1340-41.

22        The Court should deny summary judgment of noninfringement based on the Defendants'

23   arguments regarding divided infringement with respect to the "displaying," "revising," and

24   "resubmission" claim elements.

25        5.    <u>Regardless of claim construction arguments, no evidence has been
         submitted to show that the steps are neither performed by any Defendant
26       nor directed or controlled by any Defendant</u>

27        No evidence has been submitted to show that the steps are neither performed by any

28   Defendant nor directed or controlled by any Defendant.  As such, the burden does not shift to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

54          KELORA'S OPPOSITION TO DEFENDANTS'
            CLAIM CONSTRUCTION BRIEF AND MOTION
            FOR SUMMARY JUDGMENT

1    Kelora to show infringement.  Nevertheless, as shown in Kelora's infringement contentions, each

2    Defendant makes and/or uses servers that perform each and every step of the methods of the

3    reexamined claims of the '821 patent, including without limitation the "displaying," "revising,"

4    and "accepting a second selection criteria [comprising] a resubmission" elements. Kleinman

5    Decl., Exs. A-M.

6         Further, even if the claims are construed as Defendants propose, Defendants still directly

7    perform all elements of the claims in the course of their own internal development, deployment,

8    testing and use of the functionality accused of infringement.  *See, e.g.,* Hansen Decl., Ex A,

9    Larson Depo., 56:5-58:20.  Summary judgment of non-infringement would be improper on this

10   independent basis, even if the claims are construed in the erroneous manner proposed by the

11   Defendants.

12        While Kelora reserves all rights to adduce additional evidence of the Defendants'

13   infringement, the exemplary evidence of infringement in Kelora's infringement contentions is, at

14   minimum and Mr. Gafford's opinions regarding infringement are sufficient to demonstrate the

15   existence of genuine factual disputes concerning infringement, as a patentee may prove

16   infringement by any method of analysis that is probative of the fact of infringement, including

17   circumstantial evidence. *See, e.g., Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F. 3d 1363

18   (Fed. Cir. 2009).

19        **F.    The Endeca Users' Infringement Is Not Divided**

20        Remarkably, the Endeca Users argue that their "websites do not even provide the core

21   functionality of the claims" at the same time they concede "that functionality is provided by [the

22   Endeca software]" that they admittedly use and run on their own servers.  Motion at 51.  In

23   essence, the Endeca Users argue they are not responsible for the functions they perform by

24   running the Endeca software on their own servers because the software is provided by a vendor.

25   This argument makes no sense and is without any legal basis.  There is no division of the

26   infringement by the Endeca Users.

27        Software is simply "a set of instructions, known as code, that directs a computer to

28   perform specified functions or operations."  *Fantasy Sports Properties, Inc. v. Sportsline.com,*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

55

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

*Inc.*, 287 F. 3d 1108, 1118 (Fed. Cir. 2002); *see also Microsoft Corp. v. AT & T Corp.*, 127 S. Ct. 1746, 1754 (2007).  The Endeca Users' servers running the Endeca software perform the functions specified by the Endeca software.  Regardless of the vendor of the software, the Endeca Users directly perform the corresponding functions by running the software on their servers.

1.    The Endeca Users Do Not Dispute That The Claim Steps "Determining Available Alternatives," "Accepting A Second Selection Criteria," and "Determining A [First/Second] Subfamily" Are Performed By The Software They Run On Their Servers

The Endeca Users and their expert, Prof. Larson, do not offer any argument or evidence that any claim step is *not* performed by the Endeca software.  Hansen Decl., Ex A, Larson Depo., 32:10-35:8; Motion at 51-54.  Prof. Larson also concedes that his conclusions are the same under the claim constructions proposed by both sides.  Larson Decl., ¶¶ 1, 12-13; Hansen Decl., Ex A, Larson Depo., 19:21-21:22; 24:8-11; 70:20-71:12; 77:19-80:25.

The Endeca Users' divided infringement argument is based, in part, on the incorrect premise that Kelora's infringement contentions regarding them are limited to the Endeca Users' respective "web servers and applications."  *See* Larson Decl., ¶¶ 2,6-16.  In fact, Kelora's infringement contentions are not so limited, as the term "web server" does not appear in Kelora's infringement contentions regarding the Endeca Users.  *See* Hansen Decl., Ex A, Larson Depo., 37:8-38:12.   Rather, Kelora's infringement contentions specify that the claimed methods are performed by the Endeca Users' "servers that are connected to clients over the Internet."  *See* Kleinman Decl., Exs. A, B, J.  This includes the servers on which the Endeca Users run the Endeca software that they say performs the functions at issue.  Hansen Decl., Ex. A, 26:10-31:13, 35:9-36:15 and Exs. B-D.

It is undisputed that the functionality accused of infringement is provided by the Endeca Users' own servers as part of the infrastructure that provides their respective web sites accused of infringement.  *See* Larson Decl., ¶¶ 5-16; Hansen Decl., Ex A, 26:10-31:13, 35:9-36:15, 38:13-46:22; Hansen Decl., Exs. B-E.  As such, there is no basis for the Endeca Users' argument that their servers do not perform the functions they claim are provided by the Endeca software. *Fantasy Sports*, 287 F. 3d at 1118; *Microsoft*, 127 S. Ct. at 1754.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

56

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    There is no allegation that the Endeca Users outsource certain functions to be performed

2    separately by Endeca or any other entity on computers not owned by the Endeca Users.  Even if

3    there were such an allegation, "A party cannot avoid infringement, however, simply by

4    contracting out steps of a patented process to another entity."  *BMC*, 498 F. 3d at 1381. There is

5    thus no basis for the Endeca Users' argument that they do not use and/or perform the

6    functionality of the Endeca software that they run on their own servers.

7        The evidence contradicts the Endeca Users' assertion that they "do not direct or control

8    how Endeca's software performs the search function."  Motion at 51; Hansen Decl., Exs. A & E,

9    46:4-76:3 and Larson Depo. Ex. 30.  The Endeca software is clearly under the direction and/or

10   control of the Endeca Users, who install, configure, test, maintain, and provide the related search

11   functionality on their respective web sites.  *Id.*  Even if some or all of the Endeca Users hire

12   someone else to install and manage their Endeca software on their own servers, "A party cannot

13   avoid infringement, however, simply by contracting out steps of a patented process to another

14   entity."  *BMC*, 498 F. 3d at 1381.

15        2.    "providing a computer readable data file of stored information"/"reading
              said data file"

16

17        There is no allegation that the steps of "providing a computer readable data file of stored

18   information" and "reading said data file" are not performed, only that these steps are performed

19   by software running on the Endeca Users' servers.  Motion at 51-54; Hansen Decl., Ex A, Larson

20   Depo., 32:10-35:8.  The evidence, in fact, shows that the Endeca Users perform these steps.

     Larson Decl., ¶¶5-7; Hansen Decl., Exs. A & E, 74:4-76:3 and Larson Ex. 30.

21

22        Defendants' arguments are based, at least in part, on their erroneous proposal to require

23   the "computer readable data file" to be "in a non-volatile storage medium."  Defendants

24   selectively rely on one of the definitions from one of their three dictionaries, but that same

25   dictionary contains a broader definition in which "store" means "To preserve data in a storage

26   device" with no limitation to "non-volatile storage."  Ex. 18 (def. of "store").  No restriction to

27   "non-volatile storage" is contained in any of the other dictionaries on which Defendants rely. *See*

28   Exs. 16-17.  The Court should decline to import this limitation from a single dictionary definition

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

57                    KELORA'S OPPOSITION TO DEFENDANTS'
                      CLAIM CONSTRUCTION BRIEF AND MOTION
                      FOR SUMMARY JUDGMENT

1   into the claims as Defendants propose. *Phillips*, 415 F. 3d 1322 (cautioning against undue

2   reliance on dictionaries in the abstract from the intrinsic evidence).

3          **G.     Claim construction for remaining terms**

4          The Federal Circuit has made clear that district courts are not (and should not be) required

5   to construe every limitation present in a patent's asserted claims. *O2 Micro Int'l Ltd. v. Beyond*

6   *Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), citing *Biotec Biologische*

7   *Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001);

8   *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (Claim construction

9   "is not an obligatory exercise in redundancy."). Rather, "[c]laim construction is a matter of

10  resolution of disputed meanings and technical scope . . . for use in the determination of

11  infringement." *U.S. Surgical*, 103 F.3d at 1568.

12         As discussed above, Kelora's proposed constructions for the terms related to the disputes

13  presented in Defendants' Motion are legally correct and should be adopted. No further claim

14  construction by the Court is needed because no other claim terms have been identified as being

15  important for the resolution of the parties' disputes on the merits. The Defendants' proposal that

16  the Court should adopt constructions for other claim terms based solely on alleged agreements in

17  different litigation regarding different patent claims and a different patentee should be rejected as

18  legally incorrect and merely advisory.

19                    1.      "said alternatives represented in the family"

20         With respect to "said alternatives represented in the family," Defendants seek improperly

21  to re-write "said alternatives" to read "all alternatives." Motion at 57. Because Defendants have

22  not identified any issue of infringement or validity for which the construction of this term is

23  needed, the Court need not undertake construction of this term. *U.S. Surgical*, 103 F.3d at 1568.

24         Moreover, Defendants' attempt to read the word "all" into the claims would be improper

25  because "all" is not present in the claim language. *Phillips*, 415 F.3d at 1313, *Vitronics*, 90 F.3d

26  1582. The Defendants point to nothing in the specification that compels their unduly limiting

27  construction, as the statement at 4:1-2 on which Defendants rely does not specify that "all"

28  alternatives must be shown. Neither does the argument on which Defendants rely from the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

58

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1   prosecution history of the parent '444 patent support their proposed construction.  The cited

2   arguments instead relate to limitations of claims 7-9 of the '444 patent which were argued to

3   "provide for visual indication of the status of the various alternatives without having to rearrange

4   the information on the screen."  '444 Prosecution, No. 4, at 18.  This is not an argument that the

5   limitation "said alternatives" of the independent claim means "all alternatives."   Defendants'

6   proposed construction should be rejected because it is without legal basis.

7   **VI.   KELORA'S OBJECTIONS TO EVIDENCE CITED BY DEFENDANTS**

8         Defendants rely on inadmissible declarations that cannot form the proper evidentiary basis

9   for summary judgment.  Kelora objects to the Declaration of Theodore Chandler (Docket No. 97)

10  as irrelevant, not based on personal knowledge and improper expert testimony.  See, FRE Rules

11  403, 602 and 702.  As noted above, the Chandler Declaration includes screen shots that were

12  created by Mr. Chandler for purposes of this litigation.  Mr. Chandler purports to

13  authenticate screen shots of a demonstration of the AMP Navigator, but he ran the tests himself

14  for purposes of this litigation to show the scope and content of the prior art, long after the prior art

15  period in question.  His is not a fact witness regarding the prior art and is not an expert.  He is

16  Microsoft's litigation counsel in this case and thus is not in a position to provide expert testimony

17  regarding the content of the prior art as he has done.   Mr. Chandler does not profess to be an

18  expert and does not provide any analysis of the AMP Navigator source code or the system that

19  was used to perform his demonstration.  Moreover, the screen shots are not evidence of what was

20  performed or offered in the critical prior art period and they do not show whether "concatenated

21  search" or "resubmission" could be performed, are being performed, or were possible or offered

22  to be performed in the relevant time period.

23        Kelora objects to Paragraphs 4-10 of and Exhibits B and C to the Declaration of Nick

24  Arnett as lacking foundation and constituting inadmissible hearsay.  Kelora further objects to this

25  evidence because it was not included in Defendants' invalidity claim charts as required under

26  Patent L.R. 3-3(c).  Declarations submitted in support of summary judgment must be based on

27  matters known to the declarant, not based on matters of opinion or hearsay.  *Bank Melli Iran v.*

28  *Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995).  Mr. Arnett lacks personal knowledge regarding the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

59

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT

1    maintenance of WWW Talk Listserve or any messages allegedly contained therein.  Moreover,

2    the alleged messages cited in his declaration constitute inadmissible hearsay.

3        Kelora objects to Exhibit 2 of the Declaration of Daniel Leventhal, the purported

4    translation of the Suzuki reference.  Mr. Leventhal lacks personal knowledge of Suzuki and the

5    translation and the translation itself is inadmissible hearsay.  The translation itself is not prior art

6    (it did not exist in the prior art) but rather testimony translated from a foreign language.  "Witness

7    testimony translated from a foreign language must be properly authenticated and any

8    interpretation must be shown to be an accurate translation done by a competent translator." *Jack*

9    *v. TransWorld Airlines, Inc.*, 854 F.Supp. 654, 659 (ND CA 1994); *see also* FRE Rules 604, 702

10   and 901.  The translator, however, has not filed a declaration or revealed his or her identity or

11   qualifications.  The translation was submitted with a Certificate, but the Certificate does not

12   include the qualifications of the signatory Takeo Ohashi and otherwise does not show or even

13   state that Takeo Ohashi has personal knowledge regarding the translation or that the translation is

14   an accurate translation done by a competent translator of the teachings set forth in Suzuki.  All

15   that is said is that it was reviewed by Takeo Ohashi and is "certified" by him to be an "accurate

16   representation" of Suzuki as a whole.

17       Kelora objects to the claim charts attached as Exhibit 1 to the Leventhal Declaration and

18   the claim constructions at pages 58-60 of the Motion, as they are not properly authenticated facts

19   based on personal knowledge nor expert testimony.  FRE 403, 602, 702.  They merely seek to

20   circumvent the already extended page limit for Defendants' brief and the Court should not search

21   the record for arguments not deemed worthy of discussion in Defendants' Motion.  *See, e.g.,*

22   *Asahi Glass Co. v. Guardian Indus. Corp.*, 2011 U.S. Dist. LEXIS 109249, 44-45 (D. Del. Sept.

23   26, 2011).

24   **VII.    CONCLUSION**

25       Kelora respectfully requests the Court to deny all summary judgments sought in the

26   Motion and to construe the claim language as set forth herein.  To the extent the Court deems

27   further construction appropriate, it should adopt Kelora's proposed constructions as set forth in

28   the Patent L.R. 4-2 Joint Claim Construction and Prehearing Statement.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

60                          KELORA'S OPPOSITION TO DEFENDANTS'
                            CLAIM CONSTRUCTION BRIEF AND MOTION
                            FOR SUMMARY JUDGMENT

DATED:  October 11, 2011          MANATT, PHELPS & PHILLIPS, LLP


                                  By:  */s/ Robert D. Becker*
                                       Robert D. Becker
                                       Ronald S. Katz
                                       Shawn G. Hansen
                                       MANATT, PHELPS & PHILLIPS, LLP
                                       1001 Page Mill Road, Building 2
                                       Palo Alto, CA  94304
                                       Telephone: (650) 812-1300
                                       Email: rbecker@manatt.com
                                       Email: rkatz@manatt.com
                                       Email: shansen@manatt.com

                                       *Attorneys for*
                                       KELORA SYSTEMS, LLC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

61          KELORA'S OPPOSITION TO DEFENDANTS'
            CLAIM CONSTRUCTION BRIEF AND MOTION
            FOR SUMMARY JUDGMENT

1

## CERTIFICATE OF SERVICE

2

3          The undersigned hereby certifies that on October 11, 2011, all counsel of record who are

deemed to have consented to electronic service are being served, via the Court's CM/ECF system

4

pursuant to Civil L.R. 5-4 and General Order 45, with a copy of the foregoing.

5

6                                               */s/ Robert D. Becker*

7

8

9

10      300714447.6

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KELORA'S OPPOSITION TO DEFENDANTS'
CLAIM CONSTRUCTION BRIEF AND MOTION
FOR SUMMARY JUDGMENT